## 18072.  GEORGIA RAILROAD & BANKING COMPANY
### v. DAWSON.

1. Ordinarily the only duty which a railway company owes to a trespasser voluntarily exposing himself to injury upon or about its property is not to injure him wantonly or wilfully after his presence has been discovered (*Ashworth* v. *Southern Railway Co.*, 116 *Ga.* 635, 43 S. E. 36, 59 L. R. A. 592), but a failure to exercise ordinary care to prevent injury to a trespasser after his presence has in fact become known, may amount to wantonness. *Charleston &c. Ry. Co.* v. *Johnson*, 1 *Ga. App.* 441 (57 S. E. 1064). And where wilful or wanton negligence has been shown, contributory negligence on the part of the trespasser, however gross, will not defeat a recovery. *Lowe* v. *Payne*, 156 *Ga.* 312, 316 (118 S. E. 924) ; *Central of Ga. Ry. Co.* v. *Thompson*, 25 *Ga. App.* 715 (104 S. E. 515) ; *Central of Ga. Ry. Co.* v. *Pelfrey*, 11 *Ga. App.* 119 (74 S. E. 854). It is the general rule that the company is authorized to act on the presumption that a person apparently of full age and capacity who is discovered standing or walking along or near its tracks will leave it in time to save himself, but in a case where a trespasser has been discovered in such an exposed position, and he is seen to be in an apparently incapacitated or helpless condition so that he could not reasonably be expected to extricate himself from his peril, a duty devolves upon the company thereafter to take such special measures for his protection as ordinary prudence would suggest, and its failure to do so may be accounted as the equivalent of wilful and wanton negligence. *Lowe* v. *Payne*, supra.

   (a) The undisputed testimony in support of the first count of the petition, alleging wilful and wanton negligence, shows that the operators of the locomotive actually discovered the presence of the deceased prior to the homicide, and since there was proof of other facts and circumstances tending to discredit the testimony of such operators as to the care and diligence exercised by them to avoid the injury, it can not be said, as a matter of law, that the jury were not authorized to find that the servants and employees of the defendant were guilty of such a failure to exercise ordinary care and reasonable diligence to avoid the homicide as would, under the circumstances, amount to wilful and wanton negligence as charged.

2. While one who voluntarily exposes himself in a position of peril upon the tracks, of a railway company, even though at a place where and at a time when the agents and servants of the company are under a duty to anticipate his presence, may be guilty of such contributory negligence, amounting to a lack of ordinary care, as will bar a recovery for his homicide, where it appears that the failure of the defendant to anticipate his presence amounts to no more than mere negligence (*Lowe* v. *Payne*, supra; *Lowe* v. *Payne*, 31 *Ga. App.* 388, 120 S. E. 691; *At-*

---

Appeal and Error, 4 C. J. p. 905, n. 41.

Railroads, 33 Cyc. p. 769, n. 75; p. 770, n. 77; p. 771, n. 78; p. 800, n. 25; p. 804, n. 46; p. 805, n. 50; p. 823, n. 51, 52; p. 840, n. 78; p. 842, n. 89; p. 857, n. 78; p. 906, n. 48; p. 909, n. 71.

*lantic Coast Line R. Co.* v. *Fulford,* 159 *Ga.* 812, 33 *Ga. App.* 631, 127 S. E. 274, 812), still if the presence of such person in a position of peril is, at the time and place of the injury, explained to have been brought about by reason of facts and circumstances beyond his control, such as would relieve him from the guilt of a lack of ordinary care in thus exposing himself, he can not be said to have been guilty of such contributory negligence as will bar a recovery on account of an injury resulting from a lack of ordinary care on the part of the defendant. *Snowball* v. *Seaboard Air-Line Ry.,* 130 *Ga.* 83 (60 S. E. 189); *Wright* v. *Southern Ry. Co.,* 139 *Ga.* 448 (77 S. E. 161); *Central of Ga. Ry. Co.* v. *Thompson,* supra; *Young v. South Ga. Ry. Co.,* 34 *Ga. App.* 537, 539 (130 S. E. 542); *Central of Ga. Ry. Co.* v. *Bridwell,* 34 *Ga. App.* 77 (128 S. E. 238).

(a) While the evidence in support of the first count by which the plaintiff sought to account for and excuse the presence of the deceased in a helpless condition on the track of the defendant at the time and place of the homicide was entirely circumstantial, it can not be said, as a matter of law, that it was insufficient to account for his predicament, and to negative the defendant's theory of drunkenness.

3. Since the verdict is authorized by the evidence on each of the counts of the petition, and no error of law is complained of, it can not be held that the court erred in overruling the motion for a new trial.

DECIDED DECEMBER 17, 1927.

Damages; from city court of Richmond county—Judge Black. March 11, 1927.

Ida Dawson brought suit against the Georgia Railroad and Banking Company for the death of her husband, who was alleged to have been killed by the operation of a locomotive of the lessees of the defendant company. The petition is in two counts. By the first count it is alleged that the deceased was near the tracks of the defendant at about 5 o'clock on the morning of December 25, 1924, when, without warning, he was overcome by unconsciousness and staggered and fell upon the track of the defendant, and was run over and killed by a locomotive of the lessees, running "rear end foremost" and unmanned by an engineer. It is alleged: that the track of the defendant was used by persons living in the vicinity as a walk-way, continuously during the day and at night, and that the track was being used for that purpose by the deceased at the time of the homicide; that this condition was known to the lessees of the defendant, their servants and agents, and that it thereby became their duty to anticipate the presence of the deceased; that the servants of the lessees operating the locomotive discovered the presence of the deceased a sufficient distance away to have stopped the train and avoided killing him;

that he was in the exercise of all ordinary care and diligence, and that the lessees were negligent in that the engineer abandoned his post of duty and did not maintain his lookout ahead; in not using every means available, after the discovery of the deceased upon the tracks, to avoid running down and killing him; in not having the locomotive under proper control; and that the lessees and their agents were guilty of wilful and wanton negligence in not stopping the locomotive after the discovery of the presence of the deceased upon the track. By the second count of the petition it is alleged: that the lessees were negligent in not anticipating the presence of the deceased upon the track at the point where and at the time when he was killed; in not keeping a lookout at the time and place of the homicide; in not discovering the presence of the deceased in time to avoid running over and killing him, and that, "by reason of the unconscious condition of the deceased, he could not, by the exercise of the degree of care of which he was capable at the time, have avoided the consequences to himself of the negligence of the lessees, their agents and servants."

The proof shows that the deceased was subject to fainting spells or fits, at which times he would fall unconscious. On the night of the homicide he left his home to work at a barber shop, where he remained until near midnight. His co-worker in the barber shop testified that the deceased did not seem to be well; also that the deceased was not under the influence of liquor. It appeared from the evidence for the defendant that later in the night the deceased was at the home of a woman witness, who testified that he was under the influence of liquor, and that she requested another witness to take him away; that he left there about 3 o'clock in the morning. The homicide took place between 4 and 5 o'clock. The undertaker who embalmed the body and a policeman who went to the scene of the accident and examined the corpse testified that they discovered no odor of liquor upon the person of the deceased, and found no bottle about his person. The engine crew consisted of the engine foreman, two switchmen, the fireman, and the engineer. At the time of the homicide the foreman was operating the locomotive, the engineer having requested him to do so while he (the engineer) made some adjustment about the injector. The foreman testified that the engine was running at a speed of between ten and fifteen miles per hour;

that he could not see very far ahead, on account of a heavy mist which was falling, but that the light on the tender was sufficient; that he suddenly discovered what seemed to be a bundle of clothing on the track about ten or fifteen feet ahead of the locomotive; that he immediately applied the emergency brakes, and stopped the engine and tender almost within their own length; that the body of the deceased was found immediately in the rear of the locomotive, a distance of about five or six feet back, and that one of the deceased's feet had been severed, and was lying a very short distance from the body. The other members of the engine crew corroborate the foreman as to the speed of the locomotive and the use of the emergency brakes, and the distance the body of the deceased was lying behind the locomotive. It appears from the evidence that the foreman had considerable experience in the operation of locomotives; that, at the time, the engine and tender were "backing up," and that he was seated on the engineer's box looking ahead, that is, in the direction in which the locomotive and tender were proceeding. Two policemen who went to the scene of the homicide immediately after the homicide testified that the body of the deceased had been dragged a distance of sixty-five yards; that the severed foot was lying near the track a distance of sixty-five yards from the body, and that they found bits of flesh and clothing scattered along the track over the intervening distance, and that the condition of the track indicated that the body had been dragged to where it was found. The jury returned a verdict in favor of the plaintiff for $1,000. A motion for a new trial was filed by the defendant, which contained the usual general grounds only, and exception is here taken to the overruling of that motion.

*Cumming & Harper, W. Inman Curry,* for plaintiff in error.
*Hammond & Kennedy,* contra.

JENKINS, P. J. (After stating the foregoing facts.) Counsel for the plaintiff in error contend that the proof offered by the plaintiff under the second count of the petition, seeking to explain and excuse the presence of the deceased prone and helpless upon the track, merely raises a reasonable suspicion or conjecture that the explanation offered might possibly be true, but can not be taken to constitute evidence of probative value establishing such theory as actually true, citing *Gainesville &c. R. Co.* v. *Edmond-*

*son,* 101 *Ga.* 747, 751 (29 S. E. 213). While the contention is not without force, we are of the opinion that the jury were au-- thorized to find that the explanation offered, as supported by the proved facts and circumstances, amounted to more than the setting up of a mere possibility, and that the jury were authorized to find as a matter of fact that the explanation thus presented constituted the most reasonable and most probable solution which could be rationally drawn in explanation of the unusual and extraordinary situation. See, in this connection, *Atlanta Coca-Cola Bottling Co.* v. *Danneman,* 25 *Ga. App.* 43 (102 S. E. 542). The plaintiff, in seeking to account for the presence of the deceased lying prone and helpless upon the track, introduced evidence in support of its exculpatory theory of sudden illness, while the defendant submitted testimony in support of its defensive theory of drunkenness. Upon the issue of drunkenness the evidence was in conflict, but the jury were authorized to find against the contention of the defendant and in favor of that of the plaintiff. The predicament of the deceased being most extraordinary in character, the jury were authorized to find as a matter of fact that if it was not occasioned by drunkenness, it would reasonably have to be taken as due to an attack of the sudden illness to which deceased was shown to have been subject, and which, there was some slight evidence going to show, might have been then impending. When a situation is proved to exist of such peculiar, unusual, and extraordinary character that it can properly be said that only certain given explanations are reasonably possible, and that no other is reasonably probable, the true explanation can be logically and legally established by eliminating the alternative theories of causation. In the instant case the jury were authorized to believe that the extraordinary condition and situation of the deceased was due either to sudden illness or to drunkenness on his part. Having rejected the evidence supporting the theory of drunkenness and accepted the evidence disproving it, they were authorized to find that the explanation offered by the plaintiff, as supported by the proved facts and circumstances, was true, and constituted the only rational and probable explanation of the undisputed peculiar situation.

*Judgment affirmed. Stephens and Bell, JJ., concur.*