24003. HAMMONTREE *v.* SOUTHERN RAILWAY COMPANY.

Decided February 21, 1935. Rehearing denied March 1, 1935.

*W. E. Mann, W. G. Mann,* for plaintiff.

*Maddox, Matthews & Owens, Sapp & Maddox, O. R. Hardin,* for defendant.

GUERRY, J. This is the second appearance of this case in this court. *Hammontree* v. *Southern Railway Co.,* 45 *Ga. App.* 728 (165 S. E. 913). At the former trial a verdict was directed for the defendant railway company, and the plaintiff excepted. The defendant, by way of a cross-bill of exceptions, complained of the overruling of a demurrer to the first count of the petition (the action being brought in two counts as shown by the first opinion rendered by this court, supra), and this court dismissed the main bill of exceptions and reversed the judgment complained of in the cross-bill. Before the remittitur reached the trial court the first count of the petition was amended. As amended it alleged that the plaintiff's husband, the deceased, while walking along the defendant's tracks, became suddenly ill from overexertion from walking in the hot sun, and fell down on the track of the defendant, when the south-bound train of the defendant was 1000 to 2000 yards away and while in plain view of the train crews of said south-bound train, and also in plain view of one Nations, a switchman or flagman of a freight-train standing near the plaintiff's husband, and that, seeing his perilous condition, they ran over and killed him; that the engineer of the south-bound passenger-train saw the deceased more than 500 yards away, and that the switchman was negligent also in not flagging the oncoming passenger-train which struck the deceased.

There is some evidence on behalf of the plaintiff that a short time prior to the injury the deceased was sitting on the cross-ties near where he was killed, and complained of feeling bad, but that he got up and started walking away, facing the south-bound passenger-train, as the witness himself left the place. The only eye-witness to the occurrence, other than the engineer, was Nations, a flagman on a freight-train that had just pulled in on a side-track, near the scene of the killing. He testified, that he was on the rear of the freight-train about 240 or 250 feet from the deceased, who was leaning against a blow-post, which was about 8 feet from the track; that when the passenger-train was about 400 yards away the deceased walked over to the track on which the train was approaching and leaned down and placed both hands on the rail or ties, and when the train was about 300 yards away, running 55 to

60 miles an hour, the deceased turned or laid on his back between the ties with his head on the rail and his feet straight away from the track, and when the engine was about two or three rail-lengths away he raised his hand and gave the "high ball" sign, and the engine struck him. The evidence discloses that the deceased was struck on the head and that his right arm was broken. The body was not crushed or mangled. This uncontradicted evidence would compel a conclusion that the deceased committed suicide. The plaintiff, however, sought to impeach this witness by proof of contradictory statements to the effect that he was not present, did not see the killing, and knew nothing about it. If the switchman was not present and did not see it, the allegations with respect to his negligence are not sustained. If he were present and did see it, the evidence does not disclose any reason why he could have prevented it, as he was 240 feet away. The testimony of the engineer was that when he was 200 yards away he discovered a white object (the deceased had on a white shirt) between the cross-ties outside the rail, which he took to be a newspaper, and did not realize that it was a human being until too late to stop the train.

Even if, as alleged, the deceased could have been seen 2000 yards away by the engineer, "it is the general rule that a railway company is authorized to act on the presumption that a person apparently of full age and capacity, standing or walking near its tracks, will leave it in time to protect himself, unless it should also appear that such a trespasser is in an apparently incapacitated or helpless condition, so that he could not reasonably be expected to extricate himself from his peril." *Hammontree* v. *Southern Ry. Co.*, supra. The only evidence which could in any way be construed as being notice of any such alleged helpless condition on the part of the deceased is the testimony of the flagman, Nations, and this evidence is not sufficient to show that the defendant's employees had an opportunity, after they should have discovered such alleged condition, to have prevented the injury.

In respect to the second count, it was said, in the former opinion in this case: "The mere failure of the employees of a railway company to discover the presence of a trespasser at a place where and at a time when it was their duty to anticipate the presence of trespassers, and thereafter to take such needful and proper meas-

ures for his protection as ordinary care might require, might amount to a lack of ordinary care, but would not in and of itself amount to wilful and wanton misconduct." *Lowe* v. *Payne,* 156 *Ga.* 312 (118 S. E. 924). The evidence wholly failed to show such wanton and wilful negligence on defendant's part as would warrant a recovery on the second count of the petition.

The allegations in the first count in respect to the failure of the defendant to blow the whistle, ring the bell, and check the speed of the train, are not violations of any duty owed by the defendant to the plaintiff, who was at most a licensee on the property of the defendant at a place 400 yards beyond a public crossing. "Before negligence per se, or any other form of negligence, is actionable in a given case, it must appear that the broken duty was due to the plaintiff personally or as a member of a class." *Platt* v. *Southern Plow Co.,* 4 *Ga. App.* 159; *Atlanta &c. Ry. Co.* v. *Gravitt,* 93 *Ga.* 369 (20 S. E. 550, 26 L. R. A. 553, 44 Am. St. R. 145). It is true that "Where persons habitually, with the knowledge and without the disapproval of the railroad company, use a private passageway for the purpose of crossing the tracks of the company at a given point, the employees of the company in charge of one of its trains, who are aware of the custom, are bound, on a given occasion, to anticipate that persons may be upon the tracks at this point; and they are under a duty to take such precautions to prevent. injury to such persons as would meet the requirements of ordinary care and diligence" (*Western & Atlantic R. Co.* v. *Michael,* 175 *Ga.* 1, 165 S. E. 37); and "while it is true that a railroad-track is a place of danger and one who trespasses thereon is guilty of negligence, yet when the railroad company discovers this negligence, or has reason to anticipate it, and such a trespasser is on the track in an apparently helpless condition, ordinary diligence requires the use of every means then available to avoid running down and killing him, and if, under such circumstances, this degree of care is not exercised, and death results, the killing will be deemed in law to have been wilful and wanton" (*Payne* v. *Hayes,* 25 *Ga. App.* 730, 104 S. E. 917), yet the evidence adduced at the trial fails to show that, even if the deceased had no design to end his own life and was truly in a helpless condition, the defendant discovered, or, by the use of ordinary care, could have discovered such alleged helpless condition in time to have avoided the injury.

Until such helpless condition became apparent, the railroad company had the right to rely upon the assumption that such person would remove himself from the tracks. The court, therefore, did not err in directing the verdict.

*Judgment affirmed. Broyles, C. J., concurs. MacIntyre, J., dissents.*

MacIntyre, J., dissenting. This is the second appearance of this case in this court. The widow of the decedent brought suit against the defendant railway company for the homicide of her husband. The petition was in two counts. The first count was based on mere negligence. The second count alleged wilful and wanton negligence on the part of the defendant. In the first trial the court overruled a motion to dismiss the first count, to which ruling exceptions pendente lite were preserved by a cross-bill of exceptions, and, after the introduction of testimony by both sides, the judge directed a verdict generally in favor of the defendant, without stating upon which count he based his action. The case was brought to this court and the judgment of the lower court reversed; this court stating "it therefore can not be held as a matter of law that the evidence demanded a finding of suicide, or that the plaintiff failed to make out her case as laid in the first count of the petition. The court having held that the first count, charging mere negligence, set forth a cause of action, this ruling became the law of the case until set aside. *Georgia Northern Ry. Co.* v. *Hutchins*, 119 *Ga.* 504 (2) (46 S. E. 659). Under the law as set forth in the preceding division of this syllabus, the action of the court in failing to sustain the demurrer to the first count of the petition was erroneous, and it therefore becomes necessary to reverse the ruling refusing to strike the first count of the petition." 45 *Ga. App.* 728. There was no decision by this court as to whether or not the plaintiff had proved her case as alleged in the second count, which count alleged wilful and wanton negligence. Before the remittitur was made the judgment of the court below, the plaintiff amended her petition. There was no demurrer to the petition as amended. In the second trial (which is now under review), after the introduction of testimony on both sides, the judge again directed a verdict generally. The evidence as to suicide was substantially the same in this trial as it was in the former trial. My discussion of this case hereafter will therefore be

irrespective of suicide. The former decision of this court on that question, relative to the direction of a verdict, became the law of the case. The amendment to the petition, among other things, alleged "that the hot sun caused petitioner's said husband [the deceased] to suddenly become ill and fall upon the track." This amendment was evidently made in view of the former decision of this court in said case. The testimony as to the helpless condition of the deceased was sufficient to make this a jury question. Therefore, the jury would have been authorized to find that the deceased was not wanting in care so as to defeat a recovery. *Central of Georgia Railway Co.* v. *Bridwell*, 34 *Ga. App.* 77, 81 (128 S. E. 238); *Snowball* v. *Seaboard Air-line Railway*, 130 *Ga.* 83 (60 S. E. 189).

Next the question arises, was the jury authorized to find, under the evidence, that the agents of the defendant company could have averted the killing in the exercise of proper care. The evidence was to the effect that the train was running sixty miles per hour through Varnells, Georgia, a community of about 300 people, without ringing the bell or blowing the whistle, and did not stop at the station on this particular day; that the public generally were accustomed to walk upon the right of way where the deceased was injured; that the train was going south; that the track was straight for about a half mile north of where the deceased was killed; that there was no obstruction which would have prevented the engineer and fireman on the locomotive traveling south from seeing the deceased; that the operators of the engine testified they did not see any object on the track until they were about 200 yards from the point where the deceased was killed; and that they thought the object was a piece of paper; that the deceased was lying down about the end of the cross-ties, having on a white shirt and dark pants; that they discovered it was a man about 100 yards from the point of the homicide; that it was impossible to stop, after they discovered it was a man, before striking him; that for *one half a mile the operators could have seen a man bending over the track*, but could not have told what it was until they "got closer;" that, however, the plaintiff's witness Nations, a flagman on another train, testified that "he [the deceased] walked over there and put his left hand, . . both hands on the end of the cross-ties, and I thought he was picking up something, and instead of raising up he stood

there and looked at that train coming until it got about the depot, about 400 yards from him, that's when he looked over there to see, and when the train got about, I will say, 300 yards from him he dropped down and laid down and rolled over on his back, and raised his head up on the rail and threw his hand up like that and the train struck him." If, according to the defendant's witness Nations, the man was in a stooping position on the edge of the track, 400 yards from the approaching train, and remained in this position until the train got within 300 yards of him and the operators of the engine did not see the object until within about 200 yards of it and did not discover it was a man until within 100 yards of him, this was proof of facts and circumstances tending to discredit the testimony of the operators as to the care and diligence exercised by them to avoid the injury. The undisputed testimony shows that the operators of the locomotive actually discovered the presence of the deceased prior to the homicide. Our courts have enunciated the following principles of law:

"Whether the frequent and continued use of the right of way of the railroad at the point where the deceased met his death was such as to require the railroad company to anticipate the presence of pedestrians on or near the track, and whether, with such notice and resulting duty, ordinary care was exercised on the part of the railroad company, are questions of fact for determination by the jury. . . While it is true that a railroad-track is a place of danger, and one who trespasses thereon is guilty of negligence, yet when the railroad company discovers this negligence, or has reason to anticipate it, and such a trespasser is on the track in an apparently helpless condition, ordinary diligence requires the use of every means then available to avoid running down and killing him; and if, under such circumstances, this degree of care is not exercised, and death results, the killing will be deemed in law to have been wilful and wanton. Contributory negligence on the part of even a trespasser will not defeat a recovery for a wanton homicide." *Payne* v. *Hayes, 25 Ga. App.* 730 (104 S. E. 917). "The undisputed testimony in support of the first count of the petition, alleging wilful and wanton negligence, shows that the operators of the locomotive actually discovered the presence of the deceased prior to the homicide, and since there was proof of other facts and circumstances tending to discredit the testimony of such operators

as to the care and diligence exercised by them to avoid the injury, it can not be said, as a matter of law, that the jury were not authorized to find that the servants and employees of the defendant were guilty of such a failure to exercise ordinary care and reasonable diligence to avoid the homicide as would, under the circumstances, amount to wilful and wanton negligence as charged." *Georgia Railroad &c. Co.* v. *Dawson,* 37 *Ga. App.* 542 (141 S. E. 57). "The mere failure of the employees of a railway company to discover the presence of a trespasser at a place where and a time when it was their duty to anticipate the presence of trespassers, and thereafter to take such needful and proper measures for his protection as ordinary care might require, might amount to a lack of ordinary care on the part of the railway company, but would not, in and of itself, amount to wilful and wanton misconduct. . . *A. C. L. R. Co.* v. *Fulford,* 159 *Ga.* 812 (127 S. E. 274)."

Applying the law to the allegations and the proof in this case, it can not be said, as a matter of law, that the jury were not authorized to find that the defendant was guilty of such failure to exercise ordinary care and reasonable diligence to avoid the homicide as would amount to wilful and wanton negligence, and the judge should not have directed a verdict for the defendant on the second count. See *Crawford* v. *So. Ry. Co.,* 106 *Ga.* 870 (33 S. E. 826). I am also of the opinion that, under the petition as amended and the evidence adduced, the judge erred in directing a verdict for the defendant on the count for mere negligence. See *Georgia Railroad &c. Co.* v. *Dawson,* supra; *Central of Ga. Ry. Co.* v. *Stamps,* 48 *Ga. App.* 309 (5) (172 S. E. 806). My opinion in this case would be otherwise if there had not been proof of facts and circumstances tending to discredit the testimony of the operators of the engine as to the care and diligence exercised by them to avoid the injury.