27503. COLLIER *et al. v.* POLLARD, receiver.

DECIDED MAY 12, 1939.

*Christopher & Cantey,* for plaintiffs.
*Beck, Goodrich & Beck, Dobbs & Dobbs,* for defendant.

FELTON, J. This action was brought by the children of James C. Collier for the homicide of their father. The petition alleged, in substance, that about 11:00 a. m. on March 21, 1938, James C. Collier was riding in an automobile by himself, and was traveling in a westerly direction in the City of Barnesville, on Market Street, which leads across the right of way of the Central of Georgia Railroad at what is known as Elm crossing; that the automobile occupied by Collier approached the public grade crossing, and as the automobile entered upon the railroad track at the crossing it was struck by a fast-moving southbound train of the defendant, which knocked Collier and the automobile in which he was riding violently from the right of way and inflicted mortal wounds on Collier from which he immediately died; that the defendant was negligent in that the train was being operated at a speed of 50 miles per hour or faster as it approached the crossing, and the engineer and fireman, the agents and servants of the defendants in charge of the train, failed to ring any bell or give any signal as said train approached the crossing, and failed to check the speed of the train as it approached the crossing; that defendant was negligent per se in that the train was approaching the crossing at a speed of 50 miles per hour or faster, in violation of an ordinance of the City of Barnesville which prohibits a train from crossing the street at a greater speed than ten miles per hour; that the engineer and fireman in charge of the train negligently failed to keep a proper

lookout; that the engineer failed to give any signal, by bell or otherwise, of the approach of the train, and the engineer and fireman failed to check the speed of the train by application of the brakes or otherwise, as they in the exercise of ordinary care should have done when they saw, or in the exercise of ordinary care could have seen, the automobile approaching within a few feet of the crossing and on the crossing in front of them; and that Collier was free from negligence, and could not have avoided the injuries and death by the use of ordinary care and diligence. The defendant filed an answer in which the allegations of the petition were denied, and contended that the ordinance mentioned in the petition was invalid.

R. O. Smith testified for the plaintiff, that he was delivering mail on the day of the accident, and was 200 yards up Elm Street from the crossing of the Central of Georgia Railroad where Collier was killed; that he saw the train come in; that it was traveling 40 miles per hour, in his opinion; that he did not notice any signal or hear any bell ringing or whistle blowing; that he did not hear the impact of the collision, but did hear the brakes of the train slammed on; that he noticed the three distress signals after the brakes went on; that he crossed the crossing twice a day; that there is an incline of about 20 per cent. to the tracks at the crossing from both streets; that from the start of the incline to the tracks is about 30 or 40 feet; that there are three tracks; that the train comes in on a curve on the inside track; that you could see better on the crossing than when you start up; that an approaching train can be seen 500 feet up the track; that there are two semaphore signals at the Elm Street crossing, which indicate when a train is in the block, but he did not notice them that morning; that what attracted his attention was that just as he came out of the walk the engine scooted by him; that the train, to the best of his knowledge, did not blow for the crossing; that there are no bells at the Elm Street crossing, and no signals except the semaphore signals which are for railroad men; that you would have to be acquainted with the semaphore system before the board would mean anything; that he heard the brakes applied and the distress signal given.

Mrs. Alton Jones, for the plaintiff, testified that she was near the Elm Street crossing on the day of the accident; that she saw the train, and it was traveling 25 or 30 miles an hour; that when

she returned to the scene Mr. Collier was dead, and he and his car were on the other side of the track; that the train cleared the crossing; that she saw nobody at the crossing before the accident; that she and her sister had passed over the crossing; that the first thing that attracted her attention was the whistle blowing; that the train was about eight telephone poles up from the crossing when she heard the whistle; that she heard it blow for the Fogg crossing and heard it blow further up for the station, and then the three little blows, and she heard the brakes go on, and turned and saw a man coming right in front of the train; that there was nothing in the world to keep him from seeing the train three or four hundred yards up the track; that he was traveling meeting the train, and it seemed like he could have seen it had he looked; that she did not see a boy on a bicycle there; that the train was in sight long enough for him to have either gone across or stopped. L. G. Lifsey, for the plaintiff, testified that he was about 50 feet from Elm Street when the accident occurred; that he saw the train that hit Collier; that he would say it was going about 40 miles an hour; that it is hard to judge the speed of a train; that he had had railroad experience and was accustomed to seeing trains, and the train was going about that fast; that Collier was meeting the train head-on; that he had to bear to the right to get up on the track; that it is about 30 feet from the street level to the top of the crossing up a 20 per cent. grade; that he saw Collier approaching the crossing before he was hit; that he did not know whether Collier stopped down from the crossing or not; that the train went the length of the train plus one car-length after the collision, and the car was scattered up and down the track, some of it two hundred feet from the crossing; that you can not see as far up the track from Market Street as you can from on the crossing, but after you get on the crossing you can see a train about 500 yards away; that there are no signal bells, but there are signal blocks there for one train against the other; that they can be used for the protection of the public; that the approaches to the crossing are paved, but the crossing is not; that Collier had crossed the first and second track before he got on the track where he was hit; that from the direction he was going, Collier could see the train for a quarter of a mile; that the train blew for the Fogg crossing, and then blew the distress signals; that after he blew for the Fogg crossing the

engineer could see Collier, and Collier could have seen the train; that the crossing is the safest in town; that he saw a boy standing at the crossing with a bicycle, and Collier passed him and went on in front of this train when it was in full view and blowing the danger signal; that the Elm Street crossing is in the city limits of Barnesville; that when you are on Market Street you could not see Fogg crossing, but riding on Market Street you could see a train at Fogg crossing, but you could not see it well until you got on the crossing; that there is nothing to indicate which track is the main track; and that it was not possible for the engineer to avoid the collision.

T. J. Berry, for the plaintiff, testified that he could not say positively that he saw the train hit Collier's car, but he saw that it was going to hit; that he thinks that he looked off for just a minute, and looked back, and the automobile was on the cowcatcher or being knocked off; that he was standing in the door of his home when it happened; that he would say that the train was going at 45 to 50 miles per hour; that the rear of the train cleared the crossing by two or three car-lengths; and that Collier was not driving fast.

The plaintiff introduced the ordinance of the City of Barnesville, limiting the speed of trains crossing Elm Street to a speed of ten miles per hour. On motion a nonsuit was granted by the court and exception was taken to that ruling.

1. Where damages are proved to have resulted by the operation of the cars of a railroad company, a presumption of negligence arises against the railroad company as to each of the negligent acts charged in the petition, and the plaintiff is entitled to recover the damages proved on such a prima facie case, unless the defendant shall carry the burden of showing that the damage was done by the consent of the injured person, or was caused by his negligence, or that the defendant was not actually guilty of the negligence charged, or, if so, the injured person could have avoided its consequences by the exercise of ordinary care after it had or should have become apparent. Even if the negligence of the injured person contributed in some degree of negligence less than that of the railroad, a recovery is still authorized in an amount diminished in proportion to such contributory negligence. *Central of Georgia Railway Co.* v. *Barnett,* 35 *Ga. App.* 528, 531 (134 S. E. 126);

*Central of Georgia Railway Co.* v. *Tribble,* 112 *Ga.* 863 (38 S. E. 356). Of course these defensive matters may appear from the plaintiff's own evidence; and if the plaintiff's evidence shows facts which would not authorize a recovery, a nonsuit would be proper. In this case at least one act of negligence was not only not negatived by the plaintiff's evidence, but was proved; and a finding that there were others might or might not have been authorized. There was evidence that a speed ordinance was violated, constituting negligence per se. Where the plaintiff relies upon more than one act of negligence, it is not necessary that he establish all the acts relied upon, in order to be able to recover. *Brooks* v. *Atlanta,* 1 *Ga. App.* 678 (57 S. E. 1081); *Cavanaugh* v. *Biggin,* 9 *Ga. App.* 466 (71 S. E. 779). In this State it can not be said as a matter of law that the failure on the part of a person approaching a railroad crossing, and unaware of the approach of a train, to stop, look, or listen, makes him guilty of a lack of ordinary care, such as would prevent a recovery in a suit for ordinary negligence. *Southern Railway Co.* v. *Slaton,* 41 *Ga. App.* 759 (3) (154 S. E. 718); *Bryson* v. *Southern Railway Co.,* 3 *Ga. App.* 407 (59 S. E. 1124); *Buffington* v. *Atlanta, Birmingham & Coast R. Co.,* 47 *Ga. App.* 85 (169 S. E. 756). What precautions one approaching a railroad crossing should take is a question for the jury. *Pollard* v. *Heard,* 53 *Ga. App.* 623 (186 S. E. 894); *Seaboard Air-Line Ry. Co.* v. *Sarman,* 38 *Ga. App.* 637 (144 S. E. 810); *Georgia Railroad &c. Co.* v. *Stanley,* 38 *Ga. App.* 773 (145 S. E. 530); *Davis* v. *Whitcomb,* 30 *Ga. App.* 497 (118 S. E. 488); *Central of Georgia Railway Co.* v. *Leonard,* 49 *Ga. App.* 689, 706 (176 S. E. 137); Pokora *v.* Wabash Railway Co., 292 U. S. 98 (54 Sup. Ct. 580, 78 L. ed. 1149).

Where the evidence does not disclose, as in this case, whether or not the injured person failed to look or listen, in the absence of evidence to the contrary it is presumed that he complied with any duty that may have devolved upon him in that regard. *Georgia Railroad &c. Co.* v. *Stanley,* supra; *Slaton* v. *Southern Railway Co.,* 45 *Ga. App.* 781 (165 S. E. 883). He was entitled to assume "that the whole world would be diligent in respect to him and his safety." *Central Railroad &c. Co.* v. *Smith,* 78 *Ga.* 694 (3 S. E. 397).

The case of *Peeples* v. *L. & N. Railroad Co.,* 37 *Ga. App.* 87 (139

S. E. 85) where the injured person placed himself in a position where the railroad could not protect him by the exercise of ordinary care, has been distinguished from cases like this one. *Georgia Railroad &c. Co.* v. *Stanley,* supra; *Coleman* v. *W. & A. Railroad,* 48 *Ga. App.* 343 (172 S. E. 577); *Central of Georgia Railway Co.* v. *Leonard, Pollard* v. *Heard,* supra. Questions of negligence, proximate cause, and failure to exercise ordinary care in avoiding the consequences of another's negligence are always questions for a jury, except in plain and indisputable cases. *Pollard* v. *Heard,* supra, and cit. It has been held that the above principle applies where the injured person and the defendant are both guilty of negligence per se. *Louisville & Nashville Railroad Co.* v. *Stafford,* 146 *Ga.* 206 (91 S. E. 29); *Pollard* v. *Horne,* 58 *Ga. App.* 799 (200 S. E. 170); *Mann* v. *Central of Georgia Railway Co.,* 43 *Ga. App.* 708 (160 S. E. 131), and cit. There being no evidence to show what precautions the deceased took before going on the crossing, or as to whether he discovered the negligence of the defendant in time to avoid it, or that he could have avoided it by the exercise of ordinary care, the court should have submitted the questions involved to a jury for determination. *Comer* v. *Barfield,* 102 *Ga.* 485 (31 S. E. 89). It was error to grant a nonsuit.

*Judgment reversed. Stephens, P. J., and Sutton, J., concur.*