34722. ELLIS *v.* SOUTHERN RAILWAY COMPANY.

DECIDED DECEMBER 4, 1953—REHEARING DENIED DECEMBER 17, 1953.

410

*Adams & McDonald,* for plaintiff in error.

*Pittman, Hodge & Kinney,* contra.

QUILLIAN, J. ■ We shall first consider the special assignments of error complaining of the admission over the plaintiff's objection of two answers to hypothetical questions propounded to a witness for the plaintiff by counsel for the defendant on cross-examination. Without going to the length of stating what the questions and answers were, we think it sufficient to say that the

questions objected to by the plaintiff and the answers thereto were based upon an assumption of fact that Brice Ellis was struck while lying with his head on the rail, in one question, and, in the other, that he was struck while lying with his feet on the rail. The witness who was the undertaker, called to the scene to remove the body, was asked a question concerning the injuries sustained by Ellis and whether, if he had been so lying in each case, he could have sustained the injuries which were inflicted. There was no evidence in the record whatsoever that Ellis was lying on the tracks, either with his head on the rail or with his feet on the rail. Though the defendant's answer alleged that Ellis was observed lying with his head on the west rail just before he was struck by the train, there was no evidence in the record, at the time these questions were propounded, supporting such a contention, the only evidence on this point being that the trainmen had stated to bystanders that Ellis was first observed by them seated on the west rail with his head in his hands, and that he was observed to rise just before he was struck, but did not have time to remove himself to a safe place. The plaintiff objected to the admission in evidence of the hypothetical question and answer.

Assuming, but not deciding, that the witness involved was such an expert as is referred to in Code § 38-1710, it is plain that he should not have been permitted to give his opinion based on facts not placed in evidence by other witnesses. This Code section expressly limits such testimony to opinions based on "facts as proved by other witnesses." See *Elliott* v. *Georgia Power Co.*, 58 *Ga. App.* 151 (197 S. E. 914) ; *Bryant* v. *State*, 197 *Ga.* 641 (6) (30 S. E. 2d 259). The trial court erred in admitting the evidence as complained of in the first two assignments of error, which was properly objected to by counsel for the plaintiff.

■ Two other assignments of error complain because the court refused to permit a witness for the plaintiff, who was at the scene of the homicide shortly after it occurred, to testify as to the refusal of the conductor and other members of the train crew to permit him to go to the front of the train for the purpose of examining the engine. This evidence was objected to by counsel for the defendant on the ground that it was irrelevant and immaterial. It is not apparent from this assignment just what relevant fact the plaintiff proposed to prove by this line of question-

ing, and, under the circumstances, the trial court did not abuse its discretion in excluding this testimony.

■ We now come to a consideration of the assignment of error complaining of the grant of a nonsuit. There was no demurrer to the petition, the substance of one of the five counts of which is set out in the statement of facts, and, without elaborately setting forth each of the witnesses' testimony, it is sufficient to say that there was evidence substantially proving the plaintiff's case as laid. Several witnesses testified that the defendant's railroad tracks passed through the City of Dalton from north to south, and that there was a street of that city running east and west, which ran up to or almost up to the defendant's right-of-way on both the east and west side thereof, but which was not opened across the right-of-way. The evidence of these witnesses was, however, that there was a well-defined path that extended at that point across the defendant's tracks, thus linking the two ends of the above-mentioned street. It was further testified that this path had been regularly used by the public continuously night and day for many years. According to some of the witnesses, this pathway was maintained by the defendant, and through its employees the defendant had not only worked this pathway so as to make it convenient for travel by the public, but by placing crossties across a ditch on said pathway, had made a little bridge over it and had thereby further facilitated its use by the public. A photograph introduced in evidence and in the record before this court showed the pathway well-defined and the crossties forming a bridge over the ditch adjacent to the tracks. This evidence made a jury question as to whether the plaintiff's husband was a licensee (*Shaw* v. *Georgia R.*, 127 *Ga.* 8, 55 S. E. 960), and had the implied consent of the defendant to use the pathway in question for the purpose of traversing its right-of-way, and further whether, under all the circumstances— considering the frequency of use and the long-continued use of that pathway and of other pathways traversing the defendant's right-of-way in the vicinity—the defendant's employees should have anticipated the presence of the deceased on the tracks. *Central of Ga. Ry. Co.* v. *Sharpe*, 83 *Ga. App.* 12 (62 S. E. 2d 427). This recent case contains a rather complete summary and statement of the law respecting the rights and duties of the parties to cases such as this one, and we do not feel that a further

dissertation on the subject would serve any useful purpose at this time. It is sufficient to say that the law, as there declared and as applied to the evidence in this case, makes it plain that the jury would have been authorized to find in favor of the plaintiff on the issue of whether or not the defendant and its servants in charge of the train should have anticipated the presence of the plaintiff's husband on its right-of-way at the time and place where he was struck and killed. As pointed out in that case, whether in a particular case there is a duty to anticipate that persons might be on the tracks of the defendant railroad, and whether the defendant's agents and employees exercised the required degree of care in keeping a lookout along the tracks ahead of the train, and whether under the circumstances due care was observed in operating the train in keeping the same under control, and whether due care required the sounding of the whistle or ringing of the bell to signal the approach of the train, are all questions of fact to be decided by the jury, and, like other questions of fact, should not be decided by the court on demurrer, or by nonsuit or directed verdict, except in plain and indisputable cases. This is not such a plain and indisputable case. Under the evidence as outlined above, the jury should have been permitted to decide these issues of fact after hearing all of the evidence. See *W. & A. R.* v. *Hughes*, 84 *Ga. App.* 511 (6) (66 S. E. 2d 382).

Another question raised by the argument before this court is whether the plaintiff's husband, though he was on the defendant's tracks either as a licensee or as a trespasser whose presence thereon the defendant was bound to anticipate, lost his character as such when he sat down or reclined on the defendant's road bed. The permission or license extended by the defendant to the deceased to go upon its tracks did not carry with it the right to voluntarily recline or sit upon the tracks, particularly when his presence there was obscured by the darkness of night. But, if the plaintiff's husband, after having gone upon the defendant's tracks at a place where it was the duty of the defendant to anticipate his presence, was by some force beyond his control brought to a sitting or reclining position, his right to recover for a negligent or wanton injury would not thereby be defeated. The holding of the courts of this State are in accord that when one who is on railroad tracks at a place where it is the duty of

the railroad to anticipate his presence, suddenly becomes ill or suffers some mental lapse that causes him involuntarily to sit down or to lie down on the tracks, his survivors, or dependents, may recover for his negligent homicide inflicted while he is thus lying or sitting on the tracks. *Southwestern R.* v. *Hankerson,* 72 *Ga.* 182; *Payne* v. *Hayes,* 25 *Ga. App.* 730 (3) (104 S. E. 917); *Central of Ga. Ry. Co.* v. *Thompson,* 28 *Ga. App.* 388 (1) (111 S. E. 88); *Ga. R. & Bkg. Co.* v. *Dawson,* 37 *Ga. App.* 542 (2) (141 S. E. 57).

The evidence in this case tended to show and would have authorized the jury to find that the plaintiff's husband suffered some mental or physical collapse which caused him to sit or lie upon the defendant's tracks. While this evidence was entirely circumstantial, it was as strong as the evidence in the case of *Ga. R. & Bkg. Co.* v. *Dawson,* supra. In the instant case, one witness testified that he saw the deceased about 15 minutes prior to the homicide, when he came to the witness's store to make a purchase, and that, though the witness did not get very close to him, he did not observe anything wrong with the deceased; this evidence would at least tend to show and authorize the jury to find that the deceased was not at that time intoxicated. There was no evidence that he was in fact intoxicated, and this condition will not be presumed. The evidence respecting the position of the deceased just prior to his being struck, that is, that he was observed to be sitting with his head in his hands, would at least authorize an inference that he had suffered some kind of physical or mental collapse. *Shaw* v. *Georgia Railroad,* 127 *Ga.* 8, supra.

We are aware that an adult person is presumed to be possessed of normal mental and physical ability, but evidence, either direct or circumstantial, may overcome such presumption. Moreover, the defendant's answer alleged that the plaintiff's husband was lying upon its tracks with his head upon a rail; and certainly, if it would be presumed that one sitting upon the rail with his head in his hands did not assume such position voluntarily, the presumption would be much stronger that one lying upon the roadbed with his head cushioned upon the rail of a busy and active railroad did not assume such position of his own choosing, particularly since the evidence tended to show that he was sober. Suicide is never presumed. Under the evidence and under the foregoing authorities, an issue for the jury was raised as to

whether the plaintiff's presence upon the track was due to his own contributory negligence.

The next question that arises in considering the exception to the nonsuit is whether there was sufficient evidence to make out a prima facie case that the defendant was guilty of one or more of the acts of negligence charged in the petition, and whether such acts of negligence constituted the proximate cause of the death for which the plaintiff sues. Code § 94-1108, provides: "In all actions against railroad companies for damages done to persons or property, proof of injury inflicted by the running of locomotives or cars of such companies shall be prima facie evidence of the want of reasonable skill and care on the part of the servants of the companies in reference to such injury." There is no question that the plaintiff's husband was killed by the operation of the defendant's train. Under the foregoing Code section, proof of that fact cast the burden upon the defendant to show the exercise of due care and skill in the operation of the locomotive at the time and place of the homicide. This Code section has been held to be only a rule of evidence, but by its very terms the proof of injury makes a prima facie case for the plaintiff, and the burden is then shifted to the defendant to go forward with evidence rebutting such presumption. Until the defendant does put in some evidence, the presumption continues of force and is a positive aid to the plaintiff's case. See *Collier* v. *Pollard*, 60 *Ga. App.* 105, 108 (1) (2 S. E. 2d 821).

However, the plaintiff introduced positive evidence of the want of due skill and care on the part of the defendant's employees in operating the train, which evidence would have authorized a jury to find in her favor on this issue. The evidence in this respect showed among other things that a person who was only a few hundred feet away from the scene of the homicide did not hear the ringing of any bell or the blowing of any whistle until after the train struck Mr. Ellis. This would be some evidence that the bell was not being rung, and the evidence was otherwise such as to make a jury issue as to whether the circumstances required it to be rung in the exercise of ordinary care in the operation of the train. This evidence would have authorized the submission of the case to the jury, and it cannot be said that the plaintiff's husband would not have been aroused by the bell had it been rung in time, since from the evidence it appeared that upon the

blowing of the whistle he did rise up from the tracks, and from this fact a jury would have been authorized to find that if he had then had sufficient warning by the ringing of the bell he might have escaped without injury.

It follows, from what has been said, that the trial court erred in granting a nonsuit, and in permitting the answers to two hypothetical questions which were not based on facts in evidence. These errors require a reversal of the judgment and the grant of a new trial.

*Judgment reversed. Sutton, C. J., concurs. Felton, J., concurs in the judgment.*