35334. GENERAL SEAT & BACK MFG. CO. *v.* BERGEN & SONS, INC.

DECIDED JANUARY 24, 1955.

*Heyman & Abram,* for plaintiff in error.

*Haas, Holland & Blackshear, M. H. Blackshear, Jr.,* contra.

NICHOLS, J. Since the sufficiency of the petition in law may not be questioned by a motion for new trial (*Kelly* v. *Strouse,* 116 *Ga.* 872 (6), 43 S. E. 280), the only question now raised is whether or not there was evidence to support the allegations of the defendant's negligence. "Where the plaintiff relies upon

more than one act of negligence, it is not necessary that he establish all the acts relied upon, in order to be able to recover. *Brooks* v. *Atlanta,* 1 *Ga. App.* 678 (57 S. E. 1081); *Cavanaugh* v. *Biggin,* 9 *Ga. App.* 466 (71 S. E. 779)." *Collier* v. *Pollard,* 60 *Ga. App.* 105, 109 (2 S. E. 2d 821). It may be seen from the foregoing statement of facts that the plaintiff relied upon two theories of negligence: (1) the defendant accumulated a deposit of combustible waste products on the Stephens Street lot behind its plant without proper safeguards; and (2) the defendant burned these waste materials after warning, without supervision, and in a strong wind. There was direct evidence tending to support the first theory; and the circumstances in evidence may have sustained the second, although it is not necessary to pass upon this question.

Taking that view of the evidence which supports the finding of the court without a jury, it appeared that the situation of the premises was as alleged and as shown by the sketch which was introduced by the plaintiff and was not drawn to scale. (See sketch on page 434).

The plaintiff, Bergen & Sons, Inc., had a leasehold interest in the lot on Stephens Street behind the defendant's plant, and sublet to the defendant buildings G, H, and B, which were used by the defendant to store materials. The defendant also obtained the right of access to these buildings. The plaintiff used the remaining buildings for storage of tools, equipment, and materials used in its business of general contracting and construction, and also parked a truck there at night. The Stephens Street lot was enclosed by a fence and gates, which were generally locked.

The defendant was engaged in the manufacture of seats and backs for chrome dinette chairs. It used plastics, chipboard, plywood, and other materials. Its waste paper, sawdust, and chips and scraps of plywood were at one time previous to the fire placed in an open field across the spur track, at X. D. J. Greene, city fire inspector, ordered the defendant to discontinue this practice, and the defendant then burned its trash in a 55-gallon steel drum on the Stephens Street lot, at J. The drum had draft-holes punched in the bottom, and was located midway between buildings B and E, which were about 26 feet apart.

Greene gave the defendant notice to stop this practice on February 26, 1953.

William Foster, the plaintiff's truck driver, testified that he parked the truck by the warehouse, B, at about 5 o'clock each night and took it away at 8 in the morning; that the defendant did not stop burning trash in the drum before the fire; and that there was a fire burning in the drum the night before the fire.

Cyrus Polan, the defendant's vice-president and general-manager, testified that his plant was cleaned daily; that the paper and wood were hauled out and the wood scraps given to the persons living in the neighborhood, by simply dumping the scraps on the Stephens Street lot and allowing the neighbors to come in and take what they wanted; and that some trash was deposited on the lot after Greene's warning, on February 26, and was usually dropped at J.

On Saturday, March 28, 1953, Polan was at the plant, and three clean-up men were also working. At about 10 or 11 o'clock, a small boy, who had observed smoke and flame behind the plant, called "Fire!" through the front door of the plant. Polan and the clean-up men looked out the back door, closed it to protect their plant, and then went out the side door, on Stephens Street, with extinguishers to put out the fire. Polan called the fire department. The men with the extinguishers were unable to control the blaze, which burned the contents of all buildings except the plaintiff's office, I.

James Owens, one of the defendant's clean-up men, testified that, when he got to the fire, the grass was burning up to the building, that the side of the building (G?) had caught fire and a wooden shack (E or F?) too; that the wind was blowing pretty heavily from the railroad down the side of the brick wall toward all the houses; that he had been out on the lot in the morning of the day the fire occurred; that a few scraps of wood would be on the ground all the time, and some in the trush can; that, when he got to the fire, the shed closest to the railroad was burning; that the fire was close to the fence and the grass against the fence, and had gotten to the barrels, all the way around the fence and up to the shed; that the trash around the barrel was burning—just little pieces of paper around on the ground were burning; that most everything on the ground around the house was burning; and that the fire spread fast.

Marvin Driscoll, also a clean-up man employed by the defendant, testified in part that the two little houses in the corner of the lot (E and F) were burning when he got out to the lot; that it was a windy day; that before the fire they had filled holes at the rear of the lot with sawdust.

C. V. Stewart, in charge of the fire station which answered the call and extinguished the fire, testified that they had sawdust and stuff down toward the railroad; that the fire started where they were burning this stuff; that it was all burning down there, sawdust and everything; that the little sheds were burning and the stuff against the building; that the sawdust was not deep and covered the area.

D. J. Greene further testified that sawdust is hard to put out once it starts burning; that it may be covered with other sawdust and will burn for several days.

The foregoing testimony, to the effect that there were scraps of wood, bits of paper, and some sawdust on the lot, was in conflict with the testimony of the defendant's officers, that the neighbors picked up every scrap of wood left out for them. And although Stewart testified that thinly spread sawdust was not a fire hazard by itself, the court was authorized to find that the sawdust on the ground, in combination with chips or scraps of wood which may have been too small for the neighbors to carry away, and with pieces of paper that were seen, was a fire hazard created and maintained by the defendant. While the defendant's motives in giving its waste products to those living in the vicinity were charitable and praiseworthy, the defendant was not thereby excused from exercising ordinary care to protect the property belonging to the plaintiff on the same lot.

The defendant does not contend that there was no evidence supporting the allegations of the plaintiff's damages. As the evidence was sufficient to show the defendant's alleged negligence on at least one theory, the court did not err in finding for the plaintiff and in denying the defendant's motion for new trial.

*Judgment affirmed. Felton, C. J., and Quillian, J., concur.*