35752. DALTON *v.* McLENDON.
35753. MOORE *v.* McLENDON.

Decided September 13, 1955—Rehearing denied September 27, 1955.

*Harold Karp, Ferrin Y. Mathews, Peter W. Walton,* for plaintiffs in error.

*Whelchel & Whelchel,* contra.

FELTON, C. J. The court erred in awarding the nonsuits. The action was based on the concurring negligence of the defendants. In order to avoid a nonsuit, the plaintiff needed only to submit evidence which would have authorized the jury to find that McLendon's negligence was the sole proximate cause of the collision, or that he was negligent *in some respect* alleged and that such negligence concurred with that of the other defendants in proximately causing the collision.

Burnice L. Massey, called for the purpose of cross-examination, testified in part: that on July 1, 1952, he was employed as a taxicab driver, and on that date picked up Dalton and Moore as fares at the Colquitt Cafe in Moultrie, Georgia; that from the Colquitt Cafe he went past the Norman Hotel and turned left on Second Avenue, went one block on Second Avenue to Second Street; that it was at the intersection of Second Avenue and Second Street where the collision took place; that at the time he was traveling on Second Avenue he was driving approximately 15 to 20 miles per hour; that, as he went into the intersection, he did not maintain that same speed, but "let off on the carbu-

retor"; that, as to whether he saw any other traffic approaching the intersection as he approached it, "No, not until it was too late"; that the car being driven by McLendon approached him to his left, which would mean that McLendon was traveling south on Second Street; that, in order to avoid the collision, he (witness) swerved to the right, but it was too late; that in his judgment McLendon was not traveling over 20 miles per hour; that if McLendon gave any signal of any kind as he approached the intersection, the witness did not hear it; that the car being driven by McLendon struck the taxicab at the rear of the left front fender and at the left front door; that, after the collision and after the two cars came to a stop, the taxicab was still headed east, turned at an angle; that the cars came to a rest at the southeast corner of the intersection; that the cars came to a stop in the taxicab's lane of traffic; that the witness was in his proper lane of traffic as he went into and across the intersection; that McLendon came across into the witness's lane of traffic where he was hit; that, as to whether the witness had a clear view on either side for approaching traffic on Second Street as he approached the intersection, "No, he did not have a clear view because of the house there and the bunch of cars parked there"; that this was why he slowed down; that, as to whether or not the way was clear before he went on into the intersection, he did not see anything; that he looked but he pulled on out there; that he pulled out into the intersection because the way appeared clear to him; that he was in the intersection before he first saw McLendon's car approaching; that he was on the west side of the intersection; that he had not reached the center of the intersection when McLendon's car struck him; that he had slowed down and looked both ways before entering the intersection; that he had started up again to cross the intersection when the collision occurred; that McLendon's car was about 4 or 5 feet away from the taxicab when he first saw McLendon's car; that there were no stop signs as to either street at the intersection.

Charlie Brown Moore testified in part: that there were no obstructions at the intersection to prevent the driver of each car from seeing the other; that the taxi driver slackened the speed of the taxicab a "good bit" as he came down the street and went into the intersection; that the taxicab was traveling at about 25

to 30 miles per hour as it came down the street; that the taxicab was not traveling over 20 to 25 miles per hour at the time of the collision; that he did not see any traffic at the intersection until the collision.

The evidence authorized the jury to find that McLendon was negligent in at least one particular, in that he failed to yield the right of way to the driver of the taxicab at the intersection. Code § 68-303 (g), which was the law applicable at the time of the collision, provided: "An operator of a vehicle shall have the right of way over the operator of another vehicle who is approaching from the left in an intersecting highway, but shall give the right of way to an operator of a vehicle approaching from the right on an intersecting highway." The petitions alleged four particular and specific acts of negligence as to the defendant McLendon. The first particular specification of negligence alleged as to McLendon was: "That the defendant William McLendon was guilty of negligence in failing to operate his car on Second Street as he approached Second Avenue in such a manner as to have said car under control and to avoid striking the cab operated by the defendant Burnice Massey and owned by the defendant George Taylor." Such specification of negligence is sufficient to cover the failure of McLendon to yield the right of way.

Though he alleged more, the plaintiff needed only to prove one of the acts of negligence alleged. *Collier* v. *Pollard,* 60 *Ga. App.* 105, 109 (2 S. E. 2d 821), and citations.

Since the evidence authorized a finding that the defendant McLendon was guilty of at least one of the acts of negligence alleged, and since, except in clear and indisputable cases, of which this is not one, questions of concurring negligence and proximate cause are questions for a jury, the court erred in awarding the nonsuits. See *McCurry* v. *Moffett,* 80 *Ga. App.* 761 (57 S. E. 2d 451).

*Judgments reversed. Quillian and Nichols, JJ., concur.*