*Andrews & Shattuck, R. Carter Pittman,* contra.

21775. H. G. HASTINGS COMPANY INCORPORATED *v.* SOUTHERN NATURAL GAS CORPORATION.

DECIDED SEPTEMBER 26, 1932.

*J. E. Mundy,* for plaintiff in error.

*Arnold, Arnold & Gambrell, O. J. Coogler, N. C. Spence,* contra.

SUTTON, J. Southern Natural Gas Corporation instituted proceedings to condemn a right of way through lands of H. G. Hastings Company Inc. for a "pipe line or pipe lines" for the transportation and distribution of natural gas, the right of way to extend through the farm of the Hastings Company in Clayton county and to be 401 rods in length and 30 feet in width. The notice of the gas company's intention to condemn stipulated that the condemnor "is to bury said pipes below plow depth on all of the lands on which

said pipes are laid." The assessors made an award fixing the value of the land at $910 and assessing the consequential damages at $6,-590, making a total of $7,500 as the compensation to be paid to the owner by the gas company. From this award each of the parties took an appeal to the superior court, and upon a trial in that court the jury returned a lump-sum verdict of $2,750. The gas company having paid and the owner having accepted the amount allowed by the award of the assessors, the court gave judgment in favor of the gas company for $4,750, this being the difference in the condemnor's favor between the amount of the verdict and the sum advanced by the condemnor under the award. The case was brought to this court by the Hastings Company upon exceptions to the overruling of its motion for new trial.

■ The trial judge in outlining the case to the jury made the following statement: "From that award of the appraisers Southern Natural Gas Corporation has brought this appeal which is now on trial before you." It is averred that the defendant, the condemnee, also appealed from the award and that the failure of the court to mention this fact had the effect of impressing the jury that the condemnor alone was dissatisfied with the award, all three of the appraisers having testified, "and the jury having deduced from their testimony their ideas on the issue." There is no merit in this ground. The appeal of either party resulted in a de novo investigation, and it was the function and duty of the jury to pass upon the issues independently of the award made by the assessors, and they were expressly instructed to this effect in another portion of the court's charge. It follows that the defendant could not have been prejudiced by the court's failure to inform the jury that the defendant had also entered an appeal. See, in this connection, *Central Georgia Power Co.* v. *Cornwell,* 139 *Ga.* 1 (3) (76 S. E. 387, Ann. Cas. 1914A, 880) ; *Atlanta, Birmingham & Atlantic R. Co.* v. *Smith,* 132 *Ga.* 725 (64 S. E. 1073).

■ It is averred that the court erred "in charging the jury upon the question of consequential benefits," there being no evidence, "as movant contends, which would support a finding of any consequential benefits" to offset the consequential damages. A ground of a motion for a new trial must be complete within itself, and this ground is defective as failing to show what the court did charge upon the subject. The assignment of error is directed only to an

alleged error in the charge of the court, and, the charge complained of not having been stated either literally or in substance, this ground of the motion presents no question for decision by this court. *Brock* v. *Brock*, 140 *Ga.* 590 (4) (79 S. E. 473) ; *Elliott* v. *Gary*, 153 *Ga.* 665 (2, 9) (112 S. E. 900). Moreover, it would seem to be a question for the jury whether the bringing of this public utility into the locality of these lands would result in any consequential benefit to the property.

■ It is alleged that the court erred "in failing to charge the jury . . that the consequential benefits assessed shall in no case exceed the consequential damages assessed." It appears that the right of way occupies less than five acres of the land, and the highest value to be placed by any witness upon the land taken was $200 per acre, so that if the jury allowed the highest valuation for the land, this item could not have exceeded the sum of $1,000. The verdict, however, was in the sum of $2,750, and it thus appears that the jury actually allowed a substantial sum as consequential damages; and this is true even if the verdict included a sum as the value of crops destroyed, the proven value of which was less than $1,750. It is therefore clear from the record that the defendant was not harmed by the court's failure to instruct the jury that the consequential benefits shall in no case exceed the consequential damages.

■ Defendant assigns error upon the following charge to the jury: "If the defendant company, H. G. Hastings Co. Inc., desired to establish an irrigation system, it could lay its pipes under or over the plaintiff's gas-pipe lines if such laying of pipes under or over the gas-pipe lines would not interfere with the transmission of gas. If you believe such to be the case, you could not consider any irrigation system as having any effect on the value of the land." The only criticisms made of this charge were: (1) that it was a conclusion by the court and amounted to an expression of an opinion on the part of the court "that said gas line would not interfere with any proposed irrigation system," and (2) that the excerpt was also a "specific instruction to the jury to disregard the irrigation project as an item of damages if the irrigation pipes could be laid over or under the gas-pipes, and was an erroneous direct instruction by the court that the gas line could in no other way interfere with an irrigation system, although there are numerous other ways in which said proposed easement would interfere with an irrigation system."

778

We do not think the charge was subject to the exception that it contained an expression of opinion that the gas line would not interfere with any proposed irrigation system. On the other hand, it stated merely that the defendant could lay its irrigation pipes under or over the plaintiff's gas-pipe lines *if to do so would not interfere with the transmission of gas.* As to the second exception, it is true that the jury were instructed in effect that the gas line would not interfere with the establishment of the proposed irrigation system unless as an obstruction to the laying of supply water-pipes, but there was no evidence to authorize an inference of any other or further interference therewith. The nearest approach to an issue of this kind was made by a witness who testified that he had heard Mr. Hastings of the defendant company speak of "putting a pond there," and that he, the witness, had been informed "of where these pipe lines broke," and that, in his opinion, "jeopardizing that pond by having a pipe line under it would depreciate its value." The witness evidently referred to some possible improper or negligent condition of the gas-pipes, from which he apprehended an explosion with resulting injury to the proposed pond or lake from which water would be supplied to the irrigation system.

In a case of this kind the consequential damages must be determined upon the theory that the public utility will be maintained and operated in a proper and lawful manner. It can not rightly be assumed "that there will be negligent construction or operation so as to cause damages in excess of that which would naturally and proximately arise from proper construction and operation. If the company be negligent in such matters, causing damages beyond those naturally arising from such construction and operation, this might give rise to a subsequent cause of action." *Central Georgia Power Co.* v. *Mays,* 137 *Ga.* 120, 124 (72 S. E. 900). Accordingly, we hold that the excerpt from the charge of the court as last referred to was not subject to exception upon either ground taken.

Furthermore, the second exception, though we have considered it upon its merits, appears to be fatally defective for the reason that it assigns the charge as error only because "there are numerous other ways in which said proposed easement would interfere with an irrigation system," without referring to the evidence or showing therefrom that the easement would otherwise interfere with the rights of the owner. The statement that the easement would inter-

feré in numerous other ways appears to be a mere argument of the pleader and contains no sort of specification as to what were the "other ways."

There are additional facts to illustrate the lack of merit in this ground, as will be shown in the following discussion of the next ground assigning error upon another excerpt from the charge of the court.

■ It is contended that the court erred in charging the jury that "H. G. Hastings Co. Inc. would have the right to cultivate and use this land as if that gas line had never been laid." It is insisted that this charge amounted to an expression of opinion that the easement would in no way interfere with the cultivation of the land, and was contrary to law for the reason that the rights of the owner must be subordinated to the uses proposed by the condemnor as defined in the condemnation proceedings, which in this case included various uses besides the laying of a gas-pipe, namely, the construction of a telephone line or lines and other pipe lines, the repairing and maintenance of the same, and patrolling the right of way, together with the right of ingress and egress, all of which would interfere with the cultivation, use and enjoyment of this land by the defendant condemnee.

The notice of the intention to condemn the right of way as served upon the owner recited that the gas-pipes were to be buried "below plow depth on all the land," and the evidence showed without dispute that they were laid accordingly. There is nothing to indicate that the plaintiff gas company had any right or authority as a telephone or telegraph company, and, so far as appears, its claim of the power of eminent domain must be confined to the business of "constructing and operating pipe-lines for the transportation and/or distribution of natural or artificial gas." Ga. L. 1929, p. 219, § 1. Cf. *Georgia Granite R. Co.* v. *Venable,* 129 *Ga.* 341 (2, 3) (58 S. E. 864). The construction and operation of telephone or telegraph lines would seem to be entirely foreign to the use for which the plaintiff is authorized to condemn the property of others, and under the record as here presented the reference to telephone and telegraph lines as contained in the notice of the intended condemnation must be treated as surplusage.

The defendant's farm consisted of a body or tract of some 1,500 acres. The right of way covered a strip 30 feet wide and 401

rods in length, and thus included less than five acres. The pipes were laid in a ditch about four feet wide and the ditch was then refilled. Less than one acre of land was actually occupied by the ditch. A witness for the plaintiff testified without contradiction that "at all places where the pipe line went across the terraces" the plaintiff repaired them with sand-bags. The evidence further showed that the defendant "is now cultivating and has planted the entire right of way except the part that is in woods, roads, and soy beans," although along the space where the ditch was excavated and refilled there is a diminished crop yield, due to clay left upon the surface in the excavation and refilling of the ditch into which the pipes were laid. A witness for the defendant testified as follows: "Evidently this 30-foot right of way is being constantly patrolled. There is a path across there all the time, even right after plowing; a day or two later there will be a path across there. It would not be practical for us to plant these high-priced crops on this 30-foot strip while it is being constantly patrolled." There was no other evidence which tended in any way to show that the defendant could not cultivate and use the land as if the gas line had never been laid. The charge did not purport to tell the jury that production would continue as before, and if we considered only the isolated excerpt complained of it would hardly seem to be erroneous for any reason assigned.

But this portion of the charge must be viewed in the light of other instructions upon the same subject. From an examination of the entire charge it appears that the jury were instructed that the defendant "could make any use of the premises condemned which did not interfere with the gas company's use of its pipe line," and that the condemnation of the property "did not take from the owner a fee title, but only certain rights to use and go upon it as specified in [the] petition or notice in this case. H. G. Hastings Company Inc. would have the right to cultivate and use this land as if that gas line had never been laid, and on the other hand the gas company would have the right to use the land for the purpose of ingress and egress in making any repairs, or in maintaining its gas line."

Considered as a whole, the charge was not an instruction that the owner would have the right to use the land for any purpose that would interfere with the use for which it was condemned by the gas company. The measure of damages in such a case is the

value of the land actually taken and the extent to which the use by the condemnee is diminished by its use by the condemnor. The appropriation to public use amounts to a withdrawal only from such private uses as will interfere with the public use. Private use is of course to be subordinated to the public use, but where the fee remains in the owner he is entitled to make any use of the property which is not inconsistent with its use for the purpose for which it was taken. The charge of the court was substantially in accord with these principles. Civil Code (1910), § 5233; *Atlantic Coast Line R. Co.* v. *Postal Telegraph-Cable Co.*, 120 *Ga.* 268 (6, 7) (48 S. E. 15, 1 Ann. Cas. 734); *Central of Georgia Ry. Co.* v. *Lawley*, 33 *Ga. App.* 375 (2) (126 S. E. 273); Smith Canal Co. *v.* Colorado Ice Co., 34 Colo. 485 (82 Pac. 940, 3 L. R. A. (N. S.) 1148); 20 C. J. 1228.

The general grounds of the motion for a new trial are not insisted upon, and, none of the special grounds showing reversible error, the judgment refusing a new trial must be affirmed.

*Judgment affirmed. Jenkins, P. J., and Stephens, J., concur.*