26796. ELLIOTT *v.* GEORGIA POWER COMPANY.

DECIDED JUNE 9, 1938. REHEARING DENIED JULY 1, 1938.

*G. Seals Aiken,* for plaintiff.
*MacDougald, Troutman & Arkwright,* for defendant.

SUTTON, J. Mrs. E. E. Elliott brought suit against Georgia Power Company for damages on account of injuries alleged to have been sustained by her as a result of the negligent operation by the defendant of one of its street-cars on August 26, 1935, the said car running into an automobile occupied by her as an invited guest of the driver of the automobile. The defendant denied the substantial allegations of the petition. The jury returned a verdict in favor of the defendant. The plaintiff filed a motion for new trial on the general grounds, and by amendment added numerous special grounds, all of which are dealt with in this opinion. The exception is to the judgment overruling that motion.

On the trial of the case there was evidence that the plaintiff, her husband, and their little son, Mrs. T. B. Elliott, her sister-in-law, and H. Trollinger, the father of Mrs. T. B. Elliott, were in an automobile which was being driven by H. Trollinger, the owner thereof, and that they were proceeding westwardly on Hunter Street in the City of Atlanta on August 26, 1935, at the rate of ten or twelve miles per hour, on the right side of the street

on which there were two lines of track, the automobile traveling between the right rail of the outbound track and the curb of the sidewalk; and that a street-car of the defendant, traveling on the same street toward the automobile, but on the outbound track, and at a rate of speed of twenty-five to thirty-five miles an hour, ran against the automobile in which the plaintiff and the others were riding, as a result of which several of them, including the plaintiff, were injured. P. R. Griffith testified that he was near by and witnessed the collision, but the motorman swore on both direct and cross-examination, that, while he was operating the street-car at the place and at the time testified to by the plaintiff and her witnesses, the automobile and its occupants were not present while he was proceeding along the outbound track (which travel he testified had been made necessary because his progress from the city had been blocked by fire hose across the track), and that no collision whatever took place between the automobile and the street-car he was operating. The evidence being conflicting, the jury was authorized to believe the testimony of the motorman rather than that of the plaintiff and her witnesses. Under the testimony of the motorman the collision did not happen; and consequently the plaintiff could not have been injured by the defendant as claimed, and the verdict must be upheld.

■ The first special ground of the motion for new trial complains that the court erred in allowing counsel for the defendant to ask the plaintiff, "What did you do before your started chasing the street-car?" it being contended that there was no evidence of her having chased the street-car after the alleged collision, and that the plaintiff was injured thereby. Even assuming that the word "chase" was not appropriate to any act of the plaintiff, it could not reasonably be said that she was harmed by the word being included in the question which was propounded after it had been made to appear that, after the alleged collision, the automobile had been driven in the direction the street-car had taken, and, after overtaking it, the driver had turned back and had taken the occupants home. It was not contended by the defendant that the plaintiff was driving the automobile; and if it could be said that the question made it appear that she was directing the pursuit of the street-car while in the automobile with the others, such an

act could only be construed as arising out of a natural and prudent desire to establish the identity of the street-car.

The next (fifth special) ground complains that the court erred in rejecting evidence of a non-expert witness, that when she visited the plaintiff after the alleged accident, "she was in a pretty bad condition when I saw her that morning." The statement of the witness being a mere opinion without any facts given on which to base it, the court did not err in rejecting it.

Ground 6 assigns error on the admission of evidence from a sister-in-law of the plaintiff, and one of the occupants of the automobile, that, in addition to a damage suit by this witness for injuries alleged to have been sustained in the alleged collision involved in the present suit, she had had another claim against the defendant. We think that the evidence was admissible on the general credibility of this witness, the general rule being that where the admissibility of evidence is doubtful it should be admitted.

Ground 7 complains of the rejection of evidence that when the witness crossed the street to the scene of the accident he suggested "that they take the ladies to a doctor." This statement was immaterial to the issue and without probative value, and was properly rejected by the court.

Ground 8 complains of the ruling of the court permitting counsel for the defendant to cross-examine the witness Griffith as to where he had worked, with whom, etc., the cross-examination taking a wide range which the plaintiff in error contends was prejudicial and irrelevant. A thorough and sifting cross-examination is permitted in the discretion of the court, and it can not be said that its discretion was abused in the present instance.

Ground 9 complains that the court erred in allowing counsel for the defendant to cross-examine the same witness as to a certain statement signed by him, asking as to its preparation, etc. This ground is controlled by the ruling immediately above.

Ground 10 complains that the court, by ordering a physician to answer a question calling for the name of a patient on whom he testified he had made a certain test to determine pregnancy, and, upon his refusal to answer the question, ordering him to jail in the presence of the jury, committed error prejudicial to the plaintiff's cause, and that, upon the witness being brought before the judge the following day and given another chance to answer the

question, the "lecture" of the witness by the court and fining him $25 for again refusing to answer the question deprived the plaintiff of a right of a fair trial. The court did not err in requiring the witness to answer. Confidential communications excluded from testimony by the Code, § 38-418, do not include those made by a patient to his physician. It was held by this court in *Dixon* v. *State,* 12 *Ga. App.* 17 (2) (76 S. E. 794): "Only when expressly provided by law can the privilege of a witness resist the demand of justice for the truth, and the witness refuse to answer a legal question." In sending the witness to jail the court did not err for any reason assigned, but was exercising the power to punish the witness for contempt for failing to answer a question which the court had ruled was pertinent. The alleged "lecture" appears from the record to have been made in the absence of the jury, and it is not insisted by movant that the jury was present. Nor can it be said that the act of fining the witness $25 was prejudicial to the plaintiff, who was in no wise a party to the refusal by the witness to answer the question, or that any part of the proceeding was harmful to the plaintiff. The court fully instructed the jury that the proceeding in no wise involved the plaintiff, and that they should not be influenced by anything said or done.

Ground 11 complains that the court erred in not declaring a mistrial on motion, because of the ruling and statement of the court in connection with the contempt proceeding. We do not think it could reasonably be said that a fair trial could not have been had under the circumstances shown, and the court did not err, for any reason assigned, in overruling the motion.

Ground 12 complains that the court erred in requiring the husband of the plaintiff to answer a question as to who called a certain physician after the alleged injuries to the plaintiff, and, upon the answer of the witness that he did not remember, allowing counsel for the defendant to further cross-examine him as to why he could not remember. The plaintiff had testified that her husband had called the physician, and how he had called him; and it was pertinent to examine the witness in that respect. The statement of the court that it was "permissible to interrogate in regard to the manner in which he called" the physician, and that it was a "pertinent question," was not, as contended by counsel, prejudicial to the plaintiff, the court being the judge of whether or not a ques-

tion is pertinent; and the continued examination as to why the witness could not remember was properly allowed on the question of the credibility of the witness.

Ground 13 complains that the court erred in permitting the witness to be examined as to why he had not called another doctor who was shown to have treated the plaintiff and to have been the family physician for some years before the alleged injury; it being contended that such examination was prejudicial to the plaintiff's cause, in view of the commitment to jail of the physician who was instead called. The action of the court was not error for any assigned reason.

Ground 14 complains that the court erred in permitting the husband of the plaintiff to be examined as to his knowledge of what doctor had delivered the last child of the plaintiff and the witness, the whereabouts of the witness at the time, and whether or not he could give the name of any doctor that delivered any of the children. Many reasons are given by counsel for the plaintiff as to why, in his opinion, the examination constituted reversible · error; but we think that the questions were admissible as to the general credibility of the witness, and that no error was committed for any reason assigned.

Ground 15 complains of the refusal of the court to allow a hypothetical question, in which the fact assumed as to the plaintiff's weight a week after the alleged injury was not supported by the evidence. The question assumed that the plaintiff weighed only ninety pounds at the time; whereas the evidence showed the weight to be one hundred and ten pounds about two weeks after the injury, and that her weight had not fallen to ninety pounds until three or four weeks after the alleged accident. The court properly sustained the objection to the question.

Grounds 16 and 17 complain of hypothetical questions permitted by the court. It would require an unnecessary elaboration to point out where in the record the bases of fact for the questions may be found. It is sufficient to say that under the evidence the questions were proper.

Ground 18 complains that the court permitted a hypothetical question based on a false assumption of facts. The record shows that the question was not answered; consequently the plaintiff was not harmed.

Ground 19 complains of the action of the court in requiring a witness, brother-in-law of the plaintiff, to answer a number of questions as to how the automobile alleged to have been struck by the defendant's street-car was brought to the garage of the witness the day following the alleged collision; it being contended that the evidence was irrelevant and prejudicial to the plaintiff. It appears from the record that in a deposition statements contradictory to testimony given by the witness on the trial of the case were made, and the examination was properly permitted as to the inconsistent statements. His testimony going to show that the automobile had to be taken or towed to the garage, it was proper to show that he had previously deposed that the car was driven in under its own power; and the manner in which the automobile reached the garage, towed or driven, was illustrative or evidential of the degree of force with which, as claimed by the plaintiff, the street-car of the defendant struck the automobile in which she was riding.

Ground 20, complaining that the court erred in excluding from evidence two pictures of the plaintiff, is without merit, it appearing from the record that they were taken fifteen years before the date of the alleged accident and before the plaintiff married and had given birth to several children and had had more than one miscarriage. Evidence of how the plaintiff appeared at the time the pictures were taken would be too remote to illustrate her appearance and state of health at the time of the alleged collision. The court properly rejected such evidence, and in giving reasons therefor, similar to the explanation we have made, did not, as contended by counsel, prejudice the cause of the plaintiff.

Ground 21 complains of the admission of testimony by E. R. Smith, that he had never known or heard of W. R. Smith, who, according to the testimony of the driver of the automobile involved in the alleged accident, had pulled it to a garage at the request of the driver, Trollinger, who had testified that W. R. Smith lived on Chappell Road. It was shown that E. R. Smith had lived near the supposed residence of W. R. Smith since the year 1921, and had never heard of him. We think the testimony was admissible for the consideration of the jury on the question whether or not there was any such person as W. R. Smith, who was alleged to have driven the car to the garage at the request of Trollinger.

Ground 22 complains that the court erred in not requiring the

motorman of the street-car, a witness for the defendant, to answer a question as to the maximum speed at which the street-car might be run. It was not claimed that the street-car was being operated at its maximum speed, and the answer sought was immaterial to the issue involved.

Ground 23 complains that the court erred in refusing to require the motorman to answer the question, "Had you proceeded on that outbound track up to the point where this accident occurred?" the court stating, on objection made to the question, that the witness had not sworn that any accident occurred, and that counsel might ask if he knew where it was claimed an accident occurred, and that if he answered that he did, he might be asked if he had proceeded to that point. The court properly refused to require the witness to answer the question as framed; and it was not error for the court to state the fact that the witness had not testified that any accident had occurred, such statement by the court not being equivalent to an expression of opinion that no accident had occurred.

Ground 24 complains that after the motorman, to the question "Did anybody ever tell you to state there was no accident?" had answered, "No, sir," the court refused to permit the witness, on objection of counsel for the defendant, to answer the question, "Were you once asked this question, and did you refuse to answer it on advice of counsel?" it being contended that the question was asked when the deposition of the witness was being taken before the trial, and was then unanswered on advice of counsel for the defendant. The question having been answered on the trial of the case, the fact that the witness had refused to answer it when his deposition was being taken was immaterial.

Ground 25 complains of the refusal of the court to allow counsel for the plaintiff to cross-examine the motorman as to whether or not he had been involved in several accidents as a motorman for the defendant. Evidence of previous negligence was plainly inadmissible, and the court did not err in restricting counsel, for any reason assigned.

Ground 26 complains that the court erred in permitting a physician to testify as to what a record which he had made showed as to physical complaints made to him by the plaintiff a few months before the time of the alleged accident, the witness not testifying

from his recollection independently of the record made by him. The record shows that the witness testified that the plaintiff had made complaints, the nature of which he did not recall, but that he personally made a written memorandum of such complaints, and he testified from that record in court. Notwithstanding that he stated that he had no recollection of what was stated to him, even after examining the record, it was permissible for him to testify from the record, because at the time it was made by him personally he knew of the facts contained in the record. *Smith* v. *Atlanta*, 22 *Ga. App.* 511 (4) (96 S. E. 334); *Jarrell* v. *Seaboard Air-Line Ry.*, 23 *Ga. App.* 717 (2), 719 (99 S. E. 386); *Akins* v. *Georgia Railroad & Banking Co.*, 111 *Ga.* 815 (3) (35 S. E. 671).

Grounds 27 and 28 complain that the court erred in allowing a witness for the defendant to testify as to the plaintiff's witness, P. R. Griffith, having had regular employment during a period when Griffith had testified that he had had only minor employment at odd jobs, which period included the date of the alleged collision which he testified he witnessed while walking around in search of work. The evidence was admissible for the purpose of discrediting the explanation made by Griffith as to why he happened to be in the vicinity of the alleged accident, and was not objectionable for any reason assigned.

Ground 29 complains of the admission in evidence of a photograph offered by the defendant, and as to which the witness Griffith had been examined. Griffith described the accident as having occurred on Hunter Street near the end of a wall, and, on being tendered the photograph showing a wall along a street, stated, "I would not say it is the one on Hunter Street, but it looks like the wall, practically like the one that is on Hunter Street." Inasmuch as the witness testified without objection that the accident happened on Hunter Street near the end of a wall, the ruling of the court in admitting the photograph was not harmful error, the objection being that no one had testified as to where the picture was taken.

Ground 30 complains that the court erred in failing to give in charge to the jury the allegations and contentions of the plaintiff as to the motorman operating the street-car on the left track or wrong side of the street. The court instructed the jury that the plaintiff contended that the defendant was negligent in its opera-

tion of the street-car, and that if they believed that the plaintiff suffered injury because of the lack of ordinary care by the defendant in the operation of its street-car, the plaintiff would be entitled to recover; also stating that the jury "may read those pleadings and ascertain more in detail than I have undertaken to state the contention of the parties to this suit." Under repeated rulings of this court the failure to state all the details of the allegations and contentions of the plaintiff did not, under the circumstances, constitute reversible error. There was no issue before the jury as to whether or not the street-car was using the track alleged by the plaintiff. The motorman admitted it, but testified that its use was necessary because his progress in going out from the business district westwardly was blocked by some fire hose on the tracks, and that in returning he had to use the outbound tracks for several blocks. The general charge of the court sufficiently informed the jury as to the right of the plaintiff to recover if injured by the negligence of the defendant.

Ground 31 complains that the court erred in verbally striking and refusing to allow counsel for the plaintiff to read to the jury allegations of an amendment to the petition, and to introduce evidence to prove, that the motorman had had so many accidents he could not remember the number, and was a grossly careless and incompetent operator, the fact being known to his employer for years, and that it continued to allow him to operate a street-car with utter disregard for the safety of the plaintiff and the public. These argumentative allegations were not relevant to the issue of whether or not the motorman was negligent in the present instance, and the court did not commit reversible error for any reason assigned.

Ground 32 complains that the court erred in failing to charge the jury in language substantially as set forth in that ground. No timely written special request to charge having been made, and the court having sufficiently presented to the jury the contentions and issues between the parties, this ground is without merit.

Ground 33 complains that the court erred in failing to state specifically certain contentions of the plaintiff; but this ground is controlled adversely to the plaintiff by what has been ruled hereinbefore in respect to the instructions given by the court.

Ground 34 complains that the charge of the court was erroneous

and prejudicial, in that it failed to state the plaintiff's contentions of the defendant's negligence and the injuries caused her thereby, "the law applicable to said allegations and the proof supporting them." This ground is also controlled adversely to the plaintiff by what has already been ruled.

Ground 35 is a general assignment of error on "rulings, statements, charges, and actions of the court and the procedure of respondent's counsel, as set forth in the foregoing grounds of this amended motion." Every ground of a motion must be complete in itself. Being deficient in that respect, this ground can not be considered.

■ In the present case a motion was made to disqualify Judge Jule W. Felton from presiding, on the ground that he is related by consanguinity or affinity, within the sixth degree, to a person who is attorney for and interested in the defendant corporation. Thereafter it was agreed in writing by counsel for both parties that the evidence on the question of disqualification in the present case is the same as that in *Georgia Power Co.* v. *Walts,* 56 *Ga. App.* 322 (6) (192 S. E. 493), where it was held: "On a motion to disqualify a judge of this court on the ground that he is related within the prohibited degree by consanguinity to a person who is an attorney for the corporate party to the case (but not an attorney in the case at bar), and is interested in that corporation, where the only positive evidence on the question is an affidavit from such attorney to the effect that he has no pecuniary interest in the case at bar and does not own any stock in the corporation, *held,* that the judge is not disqualified to act in the case." That ruling is binding on this court; and accordingly it is held that Judge Felton is not disqualified to act in the present case.

*Judgment affirmed.* *Guerry and Felton, JJ., concur.*