FOUNTAIN *v.* McCALLUM.

No. 14195.   JULY 15, 1942

*Vickers Baker* and *McDonald & McDonald,* for plaintiff.

*E. L. Grantham* and *D. E. Griffin,* for defendant.

GRICE, Justice.   Complaint for land was filed by Mrs. Daisy Fountain against J. W. McCallum.   In her petition she attacked as a forgery a certain deed under which McCallum claimed title. McCallum denied that the deed was a forgery, and further set up that he bought the property in good faith; and by amendment he alleged certain improvements and sought to have these improvements set off against the value of the land, in the event the plaintiff recovered.   The jury found for the defendant.   The plaintiff's motion for new trial, on general and special grounds, was overruled, and she excepted.

The vital question in the case is, was the deed from plaintiff to Mattie Smith a forgery?   On this issue the evidence was in sharp conflict.

It would unduly extend this opinion to enlarge on each of the several rulings announced in the headnotes.   The pronouncements made in headnotes 11 and 12 will, however, be discussed.

(11) Ground 14 complains of the testimony of Jim Smith, Mae Worth, and J. A. Griffin, as to declarations against her interest made by Daisy Fountain. The plaintiff moved to exclude the testimony of each witness, on the ground that it was irrelevant, immaterial, and incompetent, since it was something they testified she said after the time that she was adjudged insane and before the order of restoration of her competency to handle her estate and declaring her sanity restored. In the testimony of Jim Smith it does not appear when Daisy Fountain made the statement. Mac Worth testified that the statements were made "fall before last." J. A. Griffin placed it as "in 1936, I think it was." This ground further recites that it was admitted that Daisy Fountain was adjudged insane and a guardian was appointed for her property in 1931, and that an order was not taken restoring her sanity and putting her back in possession and control of her property until December 16, 1939. In passing on this objection the judge stated: "The court is of the opinion that under the section of the Code which has been cited, that any of the contracts or anything else during the pendency of the lunacy, after they have been adjudged, of course, that it is void; but I think it is rather a question for the jury to determine as to whether she knew what she was talking about when she made the statements, if she made the statements. I think it is a question for the jury to determine as to whether or not she knew what she was talking about at the time she made those statements, and the statements might be admissible as circumstance to show whether or not she knew at the time what she was talking about." We take this to be a ruling of the court in effect refusing to sustain the motion to exclude the testimony.

One of the exceptions to the hearsay rule is that generally evidence of declarations against interest by parties to the record may be received. One of the principles applicable thereto is that the declarant must at least not lack the usual testimonial qualifications that would be required of him or her if testifying on the stand. 6 Wigmore on Evidence (3d ed.), § 1751. The objection here raised is in effect that the declarant, if herself a witness, did not possess the necessary qualification to testify, since the declarations were made after the time that she was adjudged insane and before the order was entered declaring that her sanity had been restored. Whether or not, in view of this objection, the testimony of the wit-

ness as to declarations should have been excluded depends upon whether or not at the time the declarations were made the declarant herself would have been a competent witness. "The question being whether the person is trustworthy as a witness, the law now asks whether *in each case* the derangement or defect is such as to make the person highly *untrustworthy as a witness;* it no longer excludes absolutely." The italicized words so appear in the text to 2 Wigmore on Evidence (3d ed.), § 492. The same author in § 497 states that "the *capacity* of the person offered as a witness is *presumed.* . . But it is generally accepted that the fact that the witness is, at the time of testifying, or was shortly beforehand, a lawful *inmate of an asylum* for mental disease or defect, or an adjudged lunatic or defective, makes it necessary that his capacity should be examined into and an express finding appear." The authorities cited by the author in support of his statement that it is necessary that the witness's capacity should be examined into, and an express finding appear, have been examined; and few of them relate to a case where the witness, having once been committed to an insane asylum, is no longer confined therein, although there has been no order declaring the sanity restored. It expressly appears that when one of these declarations is alleged to have been made by her she was at the home of herself and her mother, and that they were talking about financial affairs. Another of the alleged declarations was made at the home of a witness; and another was made by her during the time the witness was purchasing some fish from her. The setting of each of the conversations was given, and the conversation itself repeated somewhat in detail.

The Code, § 38-1607, declares, "Persons who have not the use of reason, as idiots, lunatics during lunacy, and children who do not understand the nature of an oath, shall be incompetent witnesses." *Formby* v. *Wood*, 19 *Ga.* 581, was a case in which a person who by his guardian had sued as a lunatic entered an appeal. The case having been decided against the guardian, the lunatic came in and entered an appeal, and in doing so he filed a pauper affidavit. The question came up afterwards on a motion to dismiss the appeal on the ground that the affidavit had been made by the lunatic and appeal entered by him instead of the guardian. This court held that prima facie the lunatic was competent to take the oath and to enter the appeal, and the motion to dismiss it was

denied. In the opinion in that case attention was called to the fact that the affidavit was made before a judge of the inferior court, and it was received by the clerk of the superior court, and that it was to be presumed that this judge would not have administered the oath, or that this clerk would not have received it if the man making it were insane; and further, that some inference in favor of sanity may be drawn from the nature of the very act imputed as the act of an insane man—the affidavit. *Formby* v. *Wood* therefore may be distinguished from the instant case, but it is nevertheless a ruling that there was a presumption that he acted during a lucid interval; for we find this in the opinion: "This being so, the question is, was the affidavit of Hunt made during a period of sanity? And we think that the prima facie presumption to be made is, that it was." In *Mayor &c. of Gainesville* v. *Caldwell*, 81 *Ga.* 76 (7 S. E. 99), the interrogatories of one Turner were offered, and it was alleged that the trial court erred in not reading or hearing read the interrogatories of certain other persons and the exemplification of the record of the South Carolina Lunatic Asylum, which were offered to show that Turner, the witness, was insane at the time his interrogatories were executed. The position of counsel was that the judge should have heard the testimony as to the competency of Turner, but that instead he allowed the interrogatories and exemplification to be read to the jury. This court approved that ruling, and, relying upon the case of *Formby* v. *Wood,* supra, said: "He having been examined under a commission issuing from the court, the presumption is that the commissioners would not have examined him unless he had been sane at the time of the examination." This reference is made to the case of *Mayor &c. of Gainesville* v. *Caldwell,* because it too dealt with a presumption, although it may be distinguished for reasons similar to that which differentiates *Formby* v. *Wood,* supra, from the case at bar. In *Conoway* v. *State,* 171 *Ga.* 782 (156 S. E. 664), it was ruled: "The fact that there is evidence that a person was insane, or that she had previously been adjudged insane and is now in the State Sanitarium, does not of necessity render her incompetent as a witness. The evidence may show that the lunatic has lucid intervals; and it is for the jury to say whether the occurrence to which the witness testified occurred in a lucid interval, and also for their determination whether

or not the witness at the time of testifying, though formerly adjudged a lunatic, is sane at the time of testifying. The question of the competency of the witness in this case was for the jury, and they were correctly instructed in the charge of the court." The case from which the above is quoted is in principle authority for the proposition that the declarations made by Mrs. Fountain were not necessarily inadmissible merely because she had been previously adjudged insane, and the declarations were made when the effect of that judgment was still in operation. It is true that in that case the judge instructed the jury properly that the question of her competency as a witness was for them to determine. In the instant case complaint is not made that the judge failed to charge the jury along this line, but that he admitted the declaration. The mere fact that the declarant had been adjudged insane and placed in a lunatic asylum previously to the time that she is alleged to have been the declarant, she at that time not being in the asylum, was not in itself a reason why the testimony should have been excluded. To have sustained this motion would have been the equivalent of ruling that under no circumstances could declarations be received of a person in like situation, without first submitting proof that she was sane at the time she made them. There was nothing in the testimony as delivered by the witnesses to render evidence of her declaration prima facie inadmissible. The judge ruled correctly when he admitted the testimony, and that is the only ruling complained of in that ground of the motion now being considered. There was no presumption that the declarant was so bereft of reason as to forbid the reception of evidence concerning her declarations, although it was admitted that before the making thereof she had been adjudged insane and committed to an asylum. This ground of the motion presents no ground for reversal.

(12) It has a number of times been ruled by this court and the Court of Appeals that when a trial judge undertakes to state to the jury the principles of the Code, § 38-107, as to how the preponderance of evidence should be determined, it is his duty to instruct the jury fully and completely with respect thereto, so far as relevant to the case on trial; and that omission so to do is erroneous. See Renfroe v. Hamilton, 193 Ga. 194, 197 (17 S. E. 2d, 709), and cit. The Code section above cited states that one

of the things the jury may consider is the intelligence of the witnesses, and also the nature of the facts to which they testified. In stating the various factors mentioned in this Code section the judge 'omitted the reference to these two matters which they might take into consideration. In so doing he erred. We are not to be understood as holding that when the judge undertakes to give the contents of this section in charge, in every case he must do so in hæc verba, or that in every instance the entire section should be charged. In the instant case the evidence was in sharp conflict. One of the witnesses, the plaintiff, had at one time been adjudged insane. In addition to that, other witnesses testified as to declarations made by her after she had left the lunatic asylum but while still laboring under the judgment which sent her there, as pointed out in the previous division of this opinion. In this kind of a case we think it unfortunate that the judge omitted any reference to the intelligence of the witnesses, or indeed that he did not add the other omitted sentence, to wit, "the nature of the facts to which they testified." Viewing the case as a whole, we are unable to say that the error therein pointed out was harmless. On account of this error a new trial should be granted.

*Judgment reversed. All the Justices concur.*

ATKINSON, P. J., and DUCKWORTH, J., concur specially.

DUCKWORTH, Justice, concurring specially. I must dissent from the ruling in headnote 4. The ruling of the trial judge in admitting the tax digests for the purpose only of showing in whose name the property was returned for taxes may easily have caused injury to the party offering them. These digests were competent evidence as a circumstance on the issue of title to the property, and also on the issue made by the claim of forgery. The evidence was therefore admissible for whatever it might prove, and when the judge restricted it to the one purpose he thereby prevented the jury from considering it for any other purpose. As a practical proposition, if it be conceded, as stated in the opinion, that the jury was authorized to make the deductions there stated, they likely did not do so in the face of the instructions of the judge that they might consider it only for the one purpose stated. It is implied by the language used in the opinion that these digests were admissible without restriction; and if this be conceded, it follows that by placing the restriction thereon the court deprived

the plaintiff of a right to which she was entitled under the law, and this error was sufficient to require the grant of a new trial. I am authorized by Presiding JUSTICE ATKINSON to state that he concurs in this special concurrence.