38904. CHANDLER v. ALABAMA POWER COMPANY.

522

DECIDED SEPTEMBER 12, 1961—REHEARING
DENIED SEPTEMBER 29, 1961.

*E. J. Clower, James Maddox,* for plaintiff in error.

*Matthews, Maddox, Walton & Smith, Oscar M. Smith, John W. Maddox,* contra.

HALL, Judge. ■ ■ In ground 7 of the motion for new trial the owner complains of the admission of certain testimony of-

fered by the condemnor. The court permitted Douglas Mc-Crary, an engineer in charge of the Hydrology Department of the Alabama Power Co. to give testimony and introduce an exhibit (the admission in evidence of the exhibit being the basis of ground 8) illustrating the effect that the presence of Weiss Dam as well as Allatoona Dam would have had on the floods that occurred during the twenty-year period from 1937 to 1957. He summarized his findings by stating the number of floods that occurred over this period in a given month and what elevations on the owner's property the floods would have reached with the dams in place. In the study made by and under the direction of Mr. McCrary, the data used to enumerate the past floods were taken from some twenty books published by the United States Geological Survey. He had one of these books in court (but this one was not introduced in evidence). Mr. McCrary stated that he had no way to check the accuracy of the data. There was no testimony of any witness who had observed the floods involved in the study, nor any documentary evidence containing a record of their occurrence.

Mr. McCrary's testimony was objected to on the ground that there was not sufficient foundation laid by way of records or the witness' observations.

The owner also excepts to the overruling of an objection set out in ground 5 of his motion for new trial, to other testimony of Mr. McCrary, in which he stated the conclusions from his study as to the elevations these floods would have reached with only Allatoona Dam in place. Following this testimony the condemnor offered its Exhibit No. 5 as illustrating it graphically, which was admitted without objection.

Subsequent to the testimony objected to and after the witness had testified as to the source of his data on floods, the owner's counsel elicited from the witness on cross-examination testimony as to the elevations reached by specific floods in specific months and years and what those elevations would have been with the dams in place, and as to the number of major floods from 1952 through to 1957.

The witness' opinions as to the effect of the dams on the elevations reached by the past floods was objectionable because the

facts on which the opinions were based—the occurrence of the floods and the elevations they reached—were not testified to by any witness or document in evidence. *Kuttner v. Swanson*, 59 Ga. App. 818, 824 (2 SE2d 230); *Ellis v. Southern Ry. Co.*, 89 Ga. App. 407 (79 SE2d 541); cf. *Augusta Factory v. Barnes*, 72 Ga. 217 (53 AR 838); *Bryant v. State*, 197 Ga. 641 (30 SE2d 259); *Elliott v. Ga. Power Co.*, 58 Ga. App. 151, 153 (197 SE 914).

However, by obtaining from the witness testimony to the same effect, the owner waived his objection and cured the error. In *Rabun v. Wynn*, 209 Ga. 80, 83 (70 SE2d 745) it was held: "The allowance of . . . evidence, even if erroneous as contended, does not in the circumstances of this case require a reversal of the judgment complained of, because counsel for the defendants, on cross-examination of the witness and with full knowledge of the character of the evidence to be expected, elicited substantially the same testimony." *Southern Ry. Co. v. Ward*, 131 Ga. 21 (61 SE 913); *Chatham Amusement Co. v. Perry*, 216 Ga. 445 (117 SE2d 320); *Cooley v. Bergstrom*, 3 Ga. App. 496 (60 SE 220); *Copeland v. Ruff*, 20 Ga. App. 217 (92 SE 955); *Simmons v. State*, 34 Ga. App. 163 (128 SE 690); *Exchange Bank of Savannah v. Pate*, 41 Ga. App. 1 (151 SE 823); *Corley v. Russell*, 92 Ga. App. 417, 422 (88 SE2d 470).

There was no reversible error in overruling grounds 5, 7 and 8.

■ Ground 4A complains of the admission, over the owner's objection that it was a conclusion, of testimony by Douglas McCrary, that "the building of the dam does not cause any more rainfall upstream which will create any more floods on the Coosa River." This testimony stated something that seems rather obvious though it may have a scientific basis that should properly have been shown. It was followed by: "However, the dam will have some effect on the floods that do occur." The authorities cited in the last paragraph of Divisions 1 and 2 are applicable here.

The evidence objected to was not harmful nor reversible error.

■ In ground 6 the owner complains of the admission of the italicized testimony of Douglas McCrary included in the following excerpt from the brief of the evidence: "Plaintiff's Exhibit 5, a sheet of paper with some figures on it, is a chart which

illustrates the testimony I have just given as to past floods of the Chandler property. I have also made scientific studies to determine how those floods which have occurred in the past would be affected by the presence of Weiss Dam, as well as Allatoona Dam. That study did not reveal that there will be any more floods in number—there was the same rainfall. *That the scientific studies I have made to determine how the past floods on Coosa River would be affected by the presence of Weiss Dam, as well as Allatoona Dam, did not reveal that there would be any more floods.* The effect would have been to increase the elevation of those floods by some two or three feet, and to increase the duration of time that they would last by some two or three days. . ."

The owner objected on the ground: ". . . This line of testimony necessarily involves what the Good Lord is going to do about sending rain and floods, and I don't think any expert could testify as to that, a layman or anybody else. We submit, Your Honor, that God Almighty is not controlled by man's records. I object to that on the ground that he cannot base that on the factors which are the controlling factors."

It is true this expert witness did not explain the scientific basis for his statement that dams, had they been present in the past, would not have caused any additional floods. While an objection on such a ground might have been well taken (though we do not so decide) we do not see that the owner's objection made this point.

The overruling of ground 6 was not error.

■ In ground 9 the owner objects that the court excluded, as being a conclusion, his testimony as follows: ". . . As to whether, without that cotton land—being able to plant it in cotton, I will be able to make a profit on the operation of that farm, no, sir, I don't figure we would make a profit on it. I would lose my farm. . ."

Since a new trial will be required on another ground, it is not essential that we pass on this exclusion of evidence. However, it appears to us that the owner's testimony, "I would lose my farm," is not relevant to any issue in the case. But his testimony that he would not be able to make a profit on his farm

without the land condemned would have some relevance on the issue of consequential damages, as supporting evidence related to the owner's other testimony that he was making a living on his farm, what his net farm income was, the portion of his productive land included in the condemned land, the necessity to clear other land to make it suitable for farming, the rate of production and cost of production on the condemned land as compared with other parts of the farm. While the exclusion of this testimony at this trial might not have been harmful enough to cause a reversal of the case, we think the owner, shown to be experienced or an expert in farming, should have been permitted to give the testimony.

In ground 10 the owner complains that the court refused to permit owner's counsel to question him as to whether the condemnor had asked or acquired the right to flood his land from time to time or continuously. Ground 12 complains of the court's refusal to permit a hypothetical question to another witness as to the effect of the condemnation on the value of the owner's land, which question contained the assumption that the condemnor had the right to flood 125.3 acres from time to time or continuously. The owner contends that this questioning should have been allowed on the basis of the following allegation contained in the petition for condemnation: "It is necessary in the construction, operation and maintenance of Weiss Dam to flood or cover with water, at intervals or continuously, and to use during periods of construction of Weiss Dam, certain lands herein involved lying adjacent to the main stem of said Coosa River and its tributaries and located in Floyd County, Georgia."

A reading of the full petition shows that this allegation does not describe the specific rights in the owner's lands acquired by the condemnor; these are described specifically elsewhere in the petition. The above allegation sets out in general terms another essential element of a condemnation suit—the necessity to acquire property condemned for public use.

It was not error to refuse the offered evidence.

Ground 11 complains of the admission of the following evidence elicited by the condemnor on cross-examination of the

owner: "I don't know how much my property was returned for taxes last year. My wife is the bookkeeper and I don't know. I am not familiar with the fact that it was four thousand and fifty ($4,050) dollars. It has been increased this year, but I don't know the figures. I authorized my wife to file the return for years past." The owner objected on the ground that the tax return is not evidence of true market value.

It does not appear that the owner testified what was the tax return or valuation on his property; he stated he did not know. Therefore, there could be no error in overruling the objection made by the owner to the above evidence.

■ No error is shown in ground 13, which complains that James Highfield's testimony that he knew of no property at all in the county as productive as the owner's, that was available for sale, was ruled out as being immaterial and irrelevant. He had testified that he was not basing his opinion of the case on any sales considered comparable. The excluded evidence does not appear to be of any probative value and we do not see how the owner was harmed by the exclusion of the testimony.

■ In ground 14 complaint is made that the court excluded the testimony of James Yarborough that "From a productive standpoint I would say Mr. Chandler's land is worth anywhere from three to five times as much as the W. S. Gibbons land," upon the objection that, "it would not be a comparable sale."

It appears that Mr. Yarborough was the only witness who testified concerning the Gibbons land and he did not state a valuation or the sale price of it. He stated: ". . . In giving the values I have given on this farm, I am not basing that on any sale of any property in the open market in that same area —I don't know of any sale that has been made in that vicinity. That is just my own opinion of it. I could be wrong—I have been wrong a lot. I compared this value with some sales that's been made that is not on the Coosa River, that has been sold at public auction." "I attended a public auction down here along Cedar Creek—I think the J. L. Todd Auction Company sold some land down there. That was known as the W. S. Gibbons farm, and there were bidders down there and it was offered for sale to the public who wanted to bid on it."

It is uncertain from the evidence for what purpose the excluded testimony was offered. The owner contends it should have been admitted to permit comparative valuation of the Chandler and Gibbons lands. The record does not support this contention, or show the exclusion was harmful to the owner. The overruling of ground 14 was not error.

■ Ground 15 complains of the italicized excerpt from the following charge to the jury: "Now, Gentlemen, ordinarily the court receives the testimony of the witnesses only as to facts of which they have peculiar and direct knowledge. In cases of science or professions where peculiar knowledge is required to understand the situation, the law receives the opinion of those deemed and found to be experts in those lines and allows those experts to give their opinions upon certain facts. *The opinion testimony of an expert can be based upon hypothetical questions, or based upon observations of the expert.* However, you should not consider any opinion at all unless the facts upon which it is based are found by you to be true and correct. . ." The owner contends that the charge was not sound as a principle of law and was erroneous because, there being no evidence of the facts upon which Douglas McCrary based his opinions, the jury should not have been permitted to consider his opinions based solely on the hypothetical questions to him.

We agreed that the sentence objected to, taken alone, is not accurate. At 20 Am. Jur. 661, § 787, it is stated: ". . . Opinion testimony of an expert witness may be based upon facts within his own knowledge which he details to the jury before giving his opinion or upon hypothetical questions embracing facts supported by the evidence and relating to the particular matter upon which the expert opinion is sought, which facts, for the purposes of the opinion, are assumed to be true. . ."

In Divisions 1 and 2 we have held that the owner waived his objection to Mr. McCrary's testimony on the ground it was based on hearsay. Therefore, when we consider this excerpt along with the rest of the charge, we think it was not harmful to the owner so as to require a new trial.

■ Ground 16 complains that the court instructed the jury: "You are not concerned, gentlemen, as to what the assessors

■

did." The instruction was correct as a matter of law (see cases cited in Division 18), and it ties in with other parts of the charge informing the jury that their determination must be independent of previous actions by the assessors in the case. The owner does not show that it adversely affected the jury or was harmful to him. There was no error in overruling this ground.

■ In ground 17 the owner complains of the following excerpt from the judge's charge, as unsound as an abstract principle of law: "Whether this property will be damaged or not and the amount of damages, if any, is a matter exclusively for you to determine from the evidence that has been submitted to you."

Taken alone and literally, this excerpt would permit the jury to determine that the owner's property would not be damaged and to find no damages. Such an instruction would be erroneous and inapplicable to the evidence in this case. However, the remainder of the charge on the measure of damages for the taking of the owner's land makes it clear that the court did not intend to instruct the jury to this effect. From the import of the whole charge, and the fact that the jury awarded compensation, it appears that the excerpt objected to was not harmful; and it was not error requiring a new trial.

■ Grounds 18 and 19 complain, respectively, of the following excerpts from the court's charge: "It cannot be assumed in condemnation proceedings that there will be negligent construction or operation of the project so as to cause damage in excess of that which would naturally and proximately result from the construction and operation thereof. . . If the power company be negligent in the operation and maintenance of this dam and cause damages beyond that which ordinarily arises from such operation and maintenance, this might give rise to a separate cause of action."

The above are statements of correct principles of law applicable to damages in condemnation cases. *Miller v. Butler*, 137 Ga. 119, 124 (72 SE 918). It was not error for the court to include these instructions in its charge.

■ In ground 20 the owner complains of the court's refusal to give the following charge requested in writing: "Certain

witnesses in this case were questioned as to their knowledge of sales of property similar to that involved in this suit, in the same vicinity, quoted by the owners to real-estate men and others. These questions, and answers given by the witnesses in response thereto, should not be taken by you as evidence of the actual market value of any of the property in question, but solely for the purpose of determining how well qualified the particular witness may have been to give his opinion as to the market value of the property in question. The opinion of a witness is no better than the reasons upon which such opinion is based, and when a witness gives an opinion as to the market value of the property, it is perinent to ascertain the extent of his investigation into every matter that would be legitimate subject of inquiry by anyone desiring to purchase the property in question. Therefore, in determining the weight to be given by you to the testimony of any witness who in this case has given his opinion as to the market value of any of the property in question, you may consider, as legitimately bearing upon his ability to form an accurate opinion as to its market value, his knowledge of similar property in the vicinity of the property involved in this suit, his knowledge of the prices at which such property has been quoted in good faith by the various owners thereof in an effort to sell the same in the open market, his knowledge of the nature, surroundings, advantages, and disadvantages of the property, and any other fact or circumstances that would tend to establish the familiarity of the wi'ness with such property and with its actual market value on March 8, 1960."

The last two sentences of the request merely state in detail that the jury may consider "the opportunity the witness had for knowing the facts to which they have testified," which the court had charged (see Division 16).

The first two sentences, however, were not covered in substance elsewhere in the charge, and they are correctly applicable to the evidence in this case.

H. A. Cliett and M. J. Williamson were witnesses for the condemnor who gave their opinions as to the value of the owner's condemned property. The owner cross-examined them as to the knowledge by which they arrived at their opinions.

Cliett made comparisons of the owner's farm with the Turnbull farm. He stated: "In making up my estimate of what this land is worth, I looked at the records of the farm right across the river from this—known as the Turnbull place. I have been on the Turnbull farm several times. I attempted to sell it at one time. Some of it possibly would be classified as land of equivalent nature as this farm. As to whether, in my investigation, I determined the fact that the Turnbull farm, consisting of a little over a thousand acres, sold for $95,000, I saw the records. I am not prepared to answer with respect to the Turnbull sale to the Power Company. I was concerned about when the property was sold a year or two back, subsequent to the time I tried to sell it, and if I recall right it averaged about $132 an acre. . . I reviewed the records of the sale of Thornton E. Stokes to William Turnbull, but I am not familiar with it. I don't know exactly what the transaction was, but as I recall the price per acre was around $132. I do not know that $223,000 was the consideration for that."

Mr. M. J. Williamson also made comparisons of the owner's property with the others. He testified: "Now the two sales that I studied in connection with this had land just as good as Mr. Chandler's and they sold for less than the $175 per acre I valued this land. One of them was the Turnbull property just across the river from it, and the other was the Rogers to Davis tract. The total acreage in the Turnbull property was 1,082.98, and the sale price was $143,000. According to Mr. Turnbull's statement to me, there was no assumption of an $80,000 loan in addition to the sale price of $143,000. I considered Mr. Turnbull an honest and reliable man and talking to him is the checking I did. . ."

The testimony of these witnesses as to the price of the Turnbull land was clearly hearsay. "Ordinarily hearsay testimony is not only inadmissible but wholly without probative value, and its introduction without objection does not give it any weight or force whatever in establishing a fact. . ." *Higgins v. Trentham*, 186 Ga. 264 (1) (197 SE 862); *Mathis v. State*, 196 Ga. 288, 291 (26 SE2d 606); *Rabun v. Wynn*, 209 Ga. 80, supra; *Acme Fast Freight, Inc. v. Southern Ry. Co.*, 67 Ga. App. 885, 887 (21 SE2d 493).

Since the above testimony of Cliett and Williamson had no probative value on the question of the value of the condemned land, but could only show factors on which these witnesses based their opinions of value, the court should have instructed the jury to this effect upon request.

When evidence is admissible for one purpose but inadmissible for another purpose, the court should limit its application by proper instruction, especially when requested to do so or when objection is made to its introduction. 20 Am. Jur. 252, 253, §§ 263, 264; 88 C.J.S. 1065, § 392; 1 Wigmore, Evidence 299, 301, § 13; McCormick, Evidence 135, § 59. And to refuse a proper request for such an instruction constitutes error. 53 Am. Jur. 516, § 670.

The Georgia courts have held that it is not error to fail to instruct the jury as to the limited application of evidence in the absence of a written request. *Jackson v. State,* 204 Ga. 47 (48 SE2d 864) ; *Allmond v. Mt. Vernon Bank,* 56 Ga. App. 169, 170 (192 SE 239) ; *Swanson v. Hodges,* 96 Ga. App. 540 (101 SE2d 212).

Conversely the judge should limit the purpose for which the evidence can be considered, upon a proper request for instruction. Accord *Central of Ga. Ry. Co. v. Brown,* 138 Ga. 107, 110 (74 SE 839) ; *Denton v. Etheridge,* 73 Ga. App. 221, 226 (36 SE2d 365).

The overruling of ground 20 of the motion for new trial was error.

In ground 21 the owner complains that the court failed to charge the jury, without written request, that they would have the right to consider the answer filed by the owner and believe the facts alleged therein, insofar as they were supported by the owner's evidence, and use the same as a part of the foundation of truth upon which to base their verdict. The owner's contention is that the court's failure to so charge, when it did charge the jury it would have the petition and might "refer to it as often as you like for a description of the land, rights and interest condemned," permitted the jury to ignore or give less than equal weight to the owner's answer.

The owner's answer contained allegations and he introduced

534

evidence relating to the extent and character of his damages. The court charged extensively on the right to and elements of compensation. When considered in context with the rest of the charge, the court's reference to the petition pointed out by the owner, did not mislead the jury to give the condemnor's side of the case greater weight than the owner's. Nor does the omission complained of when the whole charge is considered appear to have been harmful to the defendant or to convey the impression that the jury was permitted to overlook the owner's contentions.

We recognize the correctness of the authorities cited by the owner. "It is the settled general rule that a trial judge, whether requested in writing or not, should give to the jury appropriate instructions on every substantial, vital, and controlling issue presented by the pleadings and evidence. . . But it is also the established general rule that, where the judge has thus fairly and correctly instructed the jury, a party who desires more specific and concrete instructions as to one of his contentions, . . . should make in writing a timely request therefor." *Rome Ry. &c. Co. v. King,* 33 Ga. App. 383 (126 SE 294). The omission complained of did not constitute a violation of this rule. In the absence of a written request, such omission was not error.

In ground 22 the owner complains of the second paragraph from the following charge to the jury: "Under the law, Gentlemen, you are the exclusive judges of the weight of the evidence, and this being so you will determine for yourselves where the greater weight or preponderance of the evidence rests on any and all issues, which in this case are submitted to you for your consideration and determination. . . The law also makes you gentlemen the exclusive judges as to the credibility of the witnesses who have testified in the case, and in determining this question you are authorized to take into consideration the manner and deportment of the witnesses on the stand as they have been examined in your presence; *the facts of their being parties to the suit, or not being parties; their relationship in any way to the parties in the case, or the absence of such relationship;* their interest in the case or its results, or the absence of such interest; the opportunity the witnesses had for

knowing the facts to which they have testified; *the reasonableness or unreasonableness of their testimony, in your opinion.* You may also take into consideration the personal credibility of the witnesses insofar as the same may legitimately appear to you upon the trial of the case, . . . You may also take into consideration the number of witnesses, although I charge you that the preponderance of the evidence is not necessarily with the greater number." (Emphasis supplied).

The owner contends that the court was attempting to charge *Code* § 38-107, which deals with determining where the preponderance of the evidence lies, and erred therefore in including in the instruction certain factors not mentioned in this Code section (italicized above) and in omitting certain other factors that are mentioned in the Code section.

There have been many cases dealing with objections to similar charges. It is true that the cases hold that when the court undertakes to charge upon the statutory guide for determining the preponderance of the evidence it must charge the provisions of *Code* § 38-107 fully. *Southern Ry. Co. v. Florence,* 81 Ga. App. 1 (57 SE2d 856).

It is also held that unless it is shown to be harmful, it is not error to omit or modify some of the language used in that Code section. *Travelers Indem. Co. v. Paramount Publix Corp.,* 52 Ga. App. 239, 240 (182 SE 923); *State Highway Board v. Bridges,* 60 Ga. App. 240, 241 (3 SE2d 907); *Georgia Automatic Gas Co. v. Fowler,* 77 Ga. App. 675 (49 SE2d 550); *Yellow Cab Co. v. McCullers,* 98 Ga. App. 601, 604 (106 SE2d 535).

The owner relied on *Southern Railway Co. v. Florence,* 81 Ga. App. 1, supra, where, at page 8, this court held a charge very similar to that here complained of was error requiring a new trial. The authorities cited in that case did not demand the decision made. Nor does *Fountain v. McCallum,* 194 Ga. 269, 279 (21 SE2d 610) require the holding contended for by the owner in the present case.

We think the present case is controlled by *Martin v. Waltman,* 82 Ga. App. 375, 380 (61 SE2d 214), where it was held upon similar objections: ". . . The gist of these contentions is that the judge undertook to charge the principles of *Code* § 38-107,

relating to a determination of the preponderance of the evidence, and failed to charge all of the elements as given in this Code section, as is necessary if the section is given in charge at all, or that, if the charge was on the credibility of witnesses, the court failed to instruct the jury fully in this respect.

"As clearly shown by the second sentence of the excerpt, this being primarily the portion of the excerpt of which complaint is made, the judge was charging the jury as to what could be considered 'In passing on the credibility of the witnesses', and not as to those elements which could be considered in determining the preponderance of the evidence. While *Code* § 38-107 provides a definite standard for a charge on the elements which the jury may consider in determining the preponderance of the evidence, and while it is true that for the most part these same elements are also applicable in a determination of the credibility of witnesses, the Code fails to provide a definite standard for a charge on the credibility of witnesses, but, instead, provides in § 38-1805 that 'The credibility of a witness is a matter to be determined by the jury under proper instructions from the court.' We think that the charge as given was proper in this respect. It substantially covers those elements which might be considered in determining the credibility of witnesses, and there is no indication of any request to charge more specifically in regard to what could be considered in relation to the credibility of witnesses." Accord *Edge v. Dorsey*, 78 Ga. App. 70 (50 SE2d 227).

In the absence of specific requests for other instructions the charge complained of was not error.

■ Ground 23 complains of the following excerpt from the charge: ". . . Damages which are the legal and natural result of the taking of the property are not too remote to be recovered, but damages which are only imaginary, or are the possible result of the taking, are too remote to be recovered." It appears that this portion of the charge merely re-stated that which preceded it: ". . . I further charge you that the damages which the landowner is entitled to recover in this proceeding include only those damages which are reasonably certain to occur. The landowner is not entitled to recover damages which

are remote or are uncertain, speculative, or merely possible. . ." While perhaps not necessary, we are of the opinion that this excerpt is not abstractly incorrect and when considered with the rest of the charge was not harmful in this case.

The overruling of this ground was not error.

■ Ground 24 complains that the court caused the amount of the assessor's award to be cut out of the judgment before it went out, along with the other pleadings and papers in the case, with the jury. The law is that the award of assessors is not proper evidence for consideration of a jury on an appeal in a condemnation case. *Atlanta, B. & A. R. Co. v. Smith,* 132 Ga. 725, 727 (64 SE 1073); 18 Am. Jur. 1001, § 355; 1018, § 375.

An appeal from an award of assessors is a trial de novo on the question of compensation, and it is the function and duty of the jury to pass upon the issues independently of the award of the assessors. *H. G. Hastings Co. v. Southern Natural Gas Corp.,* 45 Ga. App. 774, 776 (166 SE 56).

The action of the judge was in harmony with these rules and was not error.

■ As to ground 25 the exception is to the court's charge as a whole because the court failed to charge the jury ". . . in a complete, detailed, clear and understandable manner the method by which the jury should determine the consequential damages to which movant was entitled for the easement to flood, for severance, and for the prospective and consequential damages which would be suffered by movant should condemnor exercise its right to flood the easement lands to a level of 578 feet."

The court's charge on consequential damages is consistent with the law as set out in *Georgia Power Co. v. Pittman,* 92 Ga. App. 673 (89 SE2d 577), and *Central Ga. Power Co. v. Mays,* 137 Ga. 120, 124 (72 SE 900). The court also included in its charge instructions as to damages of a particular nature that the owner contended would result to his property from the taking. In the absence of written requests to charge specifically on other elements of consequential damages applicable to this case, the court's charge on the subject was adequate and not error.

■ No error is shown in ground 27 which complains of a

comment made by the judge in connection with certain proceedings in the case. The owner contends that the comment was an expression of opinion as to what had been proved in the case. The owner at the trial had objected to cross-examination as to his tax returns (see Division 7). In making the objection owner's counsel stated: "He knows and everyone else knows that no one returns property at true market value for taxation." The judge then stated: "Property is returned in this county on a certain percent of the value."

This ground is controlled by the holdings in *Moore v. McAfee*, 151 Ga. 270, 275 (106 SE 274); and *Head v. Pollard Lumber Sales*, 88 Ga. App. 757 (77 SE2d 827). These cases hold that statements made by the court in colloquy with counsel, which are prejudicial or intimate an opinion which would not be permissible in a charge to the jury, are not good ground for a new trial unless a motion for mistrial was made. This is especially true when the judge was ruling on a point made by the complaining party. *Herndon v. State*, 45 Ga. App. 360, 361 (164 SE 478).

The owner has not argued ground 26 either by brief or orally, and we treat it as abandoned.

Since a new trial is required on other grounds, it is not necessary to decide upon grounds 1, 2, 3, and 4 of the motion for new trial.

*Judgment reversed for the reasons stated in Divisions 5 and 14 of the opinion. Felton, C.J., and Bell, J., concur.*

On Motion for Rehearing.

Hall, Judge. In its motion for rehearing the defendant contends that the case of *Central R. Co. v. Mitchell*, 63 Ga. 173, is controlling authority and requires a different ruling in Division 1 of the opinion. This case at page 180 states: "The expert was competent to testify. Every expert derives much of his knowledge from books as well as from experience, and can give his opinion based upon the knowledge acquired from both sources." This holding applied to the testimony of a civil engineer who had surveyed railroads, and who had surveyed the railroad in question at the place of the accident, and gave "a considerable amount of evidence as to the depth, width, etc., of

the cut" and the character of soil in and above the ditch, and the effect of water running on such a place. He testified that, according to the rules of civil engineering certain kinds of soil, materials, slopes, and supports were used for railroad cuts and embankments, and what slope the cut in question should have had; and that he recollected such rules from books on engineering which he named. There was an objection to the testimony as to what the authorities give as the rules for construction of walls of cuts, on the ground that it was not original but hearsay evidence.

This was a case of the expert applying his knowledge of engineering theory and principles learned from books and experience to a set of facts he had observed. This expert's opinion was based on observed facts to which he applied professional knowledge. No unobserved facts were put in evidence. This is the character of most expert opinion evidence. The expert's opinion in the present case was based on hearsay facts to which he applied professional knowledge and experience. His testimony indicates that his factual data were a matter of public record; but no such record was put in evidence.

While defendant's motion and the authorities cited therein contain persuasive argument, the Georgia authorities are not in accord with them.

*Motion for rehearing denied. Felton, C. J., and Bell, J., concur.*