36976. GEORGIA POWER COMPANY *v.* HENDRICKS *et al.*

DECIDED FEBRUARY 27, 1958—REHEARING DENIED APRIL 1, 1958.

*Miller, Miller & Miller, Wallace Miller, Jr.,* for plaintiff in error.

*Will Ed Smith,* contra.

CARLISLE, Judge. ■ Grounds of objection to evidence raised for the first time in the amended motion for a new trial cannot be considered. *Middleton* v. *Waters,* 205 *Ga.* 847, 854 (55 S. E. 2d 359). Accordingly, an assignment of error on the admission of evidence will be considered only in the light of the specific objection made at the time it is admitted.

An objection to evidence must inform the court specifically upon what ground the evidence is inadmissible and a mere general objection without pointing out wherein or how the evidence

violates some recognized rule of the law of evidence is too general to raise any question for decision by the trial judge. *Barrett* v. *City of Brunswick,* 56 *Ga. App.* 575, 576 (193 S. E. 450); *McBride* v. *Johns,* 73 *Ga. App.* 444, 445 (36 S. E. 2d 822); *West Lumber Co.* v. *Schnuck,* 85 *Ga. App.* 385, 388 (69 S. E. 2d 577); *Freedman* v. *Petty,* 93 *Ga. App.* 590, 591 (92 S. E. 2d 588).

In special grounds 1 (a) and 1 (b) of the motion, error is assigned on the admission of certain evidence over the objection that it was "inadmissible . . . to illustrate a value", and was "irrelevant, it has no probative value, and what he intended to do with it illustrates no issue in this case." Where it appears that the only objection made to the evidence was in such general terms, under the rules of law stated above, this court will not hold that the admission of the evidence over such objection was error requiring a new trial. An objection that evidence has no probative value or that it illustrates no issue in the case is equivalent to merely stating that it is irrelevant or immaterial. See Malone *v.* State, 16 Ala. App. 185 (76 So. 469).

■ Special ground 1 (c) assigns error on the refusal of the court to exclude from the evidence a portion of the answer of the witness Yates T. Songer to cross-interrogatory No. 2. On direct interrogatory No. 2, the witness had answered that he was familiar with the land being condemned, and in answer to direct interrogatory No. 4, he stated without objection that in his opinion the land had a fair market value of $500 per acre. On cross-interrogatory No. 2, he was asked to give in detail what knowledge he had of the land, the number of acres involved, whether it was subject to overflow from the Ocmulgee River, and for what purposes it had been used in the last 30 years, and to give any other facts which would throw light on his knowledge of the land involved. The witness answered to this cross-interrogatory that he realized that the land was subject to overflow from the Ocmulgee River in the winter rainy season and that from his examination of the land, the overflow never reaches a depth of more than two feet, and the river recedes rapidly and the land dries out within about two weeks. He then stated: "My plan was to put some earth-moving equipment on the property and push enough dirt on the low area to bring the grade up at least three more feet which should take care of this overflow

situation, and would enable me to go along with the proposed building project." Counsel for the Power Company objected to the answer as not being responsive and on the ground that the plan was purely speculative as to what the witness might do with the property if he were able to acquire it. The witness further stated in answer to this question, "The land involved in the legal description covers approximately 25 acres, although I was trying to purchase approximately 40 acres for my purposes—on either side of the new highway, but preferably on the north side, and lies between Savage Creek and the Ocmulgee River." Counsel objected to this answer on the ground that it was not responsive to the question. Both of these objections were overruled by the court.

In special ground 1 (d), error is assigned because the witness Songer was permitted to state in answer to the question propounded on cross-interrogatory that for his purposes the location of the land was ideal, and that his offer of $500 per acre was a reasonable and equitable price, but that the condemnees had refused his offer, over the objection that the true value of the amount of damages is the market value of the property at the time it was condemned, and that this evidence did not constitute a true or correct method of proving market value because there was no evidence that he had made an offer which was binding upon the witness and the condemnees and that what he expected to do with the property was too speculative and remote.

The witness also testified in answer to another interrogatory that he had offered to purchase as much as 40 or 50 acres of the property involved and adjacent property and that his plans included the building of some modern cottages on the land and that they also included the building of a fishing camp on a 20-acre pond and establishing a hunting club on the 3,000-acre tract whereon the pond was located which tract is adjacent to that involved in this suit and which the witness proposed to lease. This evidence was objected to on the ground that it was not responsive, that whatever plans the witness might have had were too speculative and remote. The trial court overruled all of these objections except with respect to the testimony as to the leasing of 3,000 acres of adjoining property for a hunting club, which the court excluded, and this ruling is assigned as error in special ground 1 (e) of the motion.

The objections stated by counsel to the court as set forth in special grounds 1 (c), (d), and (e) were practically synonymous with an objection that the evidence was irrelevant and immaterial and without probative value. However, assuming that these objections were properly made, it is not apparent from the record in this case that harmful error was committed by the court in permitting these answers to the interrogatory to go to the jury. This is so because the witness had already in answer to other interrogatories stated what his opinion as to the value of the property was, and while these answers thus objected to may not have been responsive to the questions, it is not shown how this evidence adversely affected the verdict in the case. The burden is on a party alleging error to show not only error, but harmful error, and the mere admission over objection of irrelevant or immaterial evidence without more does not constitute reversible error. Not every instance of the admission of illegal evidence is cause for a reversal. *Hall* v. *State*, 202 *Ga.* 619, 620 (44 S. E. 2d 234); *Childers* v. *Ackerman Construction Co.*, 211 *Ga.* 350, 356 (86 S. E. 2d 227). The trial court did not err in overruling special ground 1 (c), 1 (d) and 1 (e) of the motion for a new trial.

■ The second special ground of the motion for a new trial complains of the trial judge's ruling excluding evidence of the sale of 98 acres of land some three miles distant from the tract here involved. It appears from the record that this tract of 98 acres fronted on a different highway and that the witness whose testimony was sought to be introduced purchased the tract for $4,500. It also appears from the testimony offered that the purchaser held a mortgage on the property and that he purchased it from the mortgagor. While there are no other facts of record to indicate that the sale of this property was not a sale by parties dealing at arms' length, and while there is no presumption that a purchase of property by a mortgagee from his mortgagor is anything other than a free and voluntary exchange, nevertheless, under the facts of this case, it is not apparent that the trial judge abused his discretion in excluding this evidence since it is not apparent that the property thus sold was similar to the property involved in this proceeding or that the sale was under such conditions as to demand an inference that the price reflected the fair market value of the property. *Flemister* v. *Central Ga.*

374

*Power Co.*, 140 *Ga.* 511, 515 (6) (79 S. E. 148); *West* v. *Fulton County*, 95 *Ga. App.* 320 (97 S. E. 2d 785). The trial court did not err in excluding this evidence.

■ Special ground 3 (a) complains that two portions of the charge of the court, when taken together, are susceptible to the interpretation that they instructed the jury that there were three elements of damages to be awarded the defendant. The language objected to in this ground is as follows: *"There are two kinds of damages that are involved in this controversy. One is direct or actual damages, that is, damages that result from the taking of a quantity of land,* as set out in the petition as *24 acres or more,* or whatever it might be, as shown by the evidence. Georgia Power Company undertakes to seize and take and use for its purpose of building a transmission line thereon. The Georgia Power Company must pay for that land, its fair market value, and you must determine what the fair market value is from the evidence submitted to you, under the rules of law I have already given you in charge, and will give you hereafter.

*"They (the jury) shall assess the value of the property taken and used and the damages done, and they shall also assess the consequential damages to the property, if any."*

These portions of the charge, it is contended, did not state a correct abstract principle of law and were prejudicial and harmful to the plaintiff in that they permitted and authorized the jury to find double damages and damages in excess of that allowed by law. These portions of the charge are not susceptible to the interpretation placed thereon by the plaintiff in error. The first half of the second portion quoted above is plainly just a repetition of the first portion quoted and excepted to. The charge is not excepted to as being repetitious or as unduly emphasizing the defendant's contentions as against those of the plaintiff.

Special ground 3 (b) assigns error on a portion of the charge instructing the jury with respect to consequential damages on the ground that it did not limit those damages to such as would naturally and proximately arise. Special ground 3 (c) complains that the last portion of the charge quoted above stated an incorrect abstract legal principle in that it made it mandatory that the jury find consequential damages and that it constituted an

expression of opinion by the court that the condemnee had suffered consequential damages. Special ground 3 (d) assigns error on the refusal of the court to give a timely written request to charge on consequential damages as follows: "I charge you in your deliberations as to whether you will award any consequential damages to the landowner, that is, damages to the land of the landowner that is not occupied by said wires, guy wires, anchors, braces, supports, towers, frames and poles of Georgia Power Company, under the law, you are required to do so upon the proposition that the Georgia Power Company's facilities on the right-of-way will be maintained in a proper and lawful manner." Special ground 3 (e) assigns error on the first portion of the charge quoted above and particularly the words "24 acres or more", and "the Georgia Power Company must pay for *that land* its fair market value", etc., on the grounds that these words constituted an expression of opinion by the court that the condemnor was taking 24 acres or more to the exclusion of any use by the condemnees and that it led the jury to believe that the condemnor was taking the entire 24 acres, and on the ground that it authorized the jury to base their verdict on the illegal premise that the entire right-of-way of 24 acres was being appropriated by the condemnor to the exclusion of any use by the condemnees.

The evidence shows that at the time the trial was had in this case, the right-of-way had been taken and the power line erected thereon. The judge charged the jury that they were to determine "what damages, if any, the defendant *sustained* from the proof that is submitted to you under the rules of law that will be given you in charge by the court"; that no person holds absolute title to land but that his property in land is subject to the right of the State and public service corporations to take the land to use for public purposes, and that when land is so taken the owner is entitled to compensation for damages direct or consequential that result from the taking and using of the property. He charged that they should assess the value of the property taken and used and the damages done, and also assess the consequential damages to the property, if any, and that in arriving at the amount of the verdict, the jury should take into consideration the value of only such land as would be exclusively occupied by the Power

Company and that the remainder not actually so taken could be used by the landowner for any purpose not inconsistent with the condemnor's rights although it might be embraced within the right-of-way; that they were authorized to allow damages in the form of consequential damages in favor of the landowner if they should find "from a preponderance of the evidence" that any such damage existed to the remainder of the right-of-way not so occupied by the Power Company, and, "I charge you further, Gentlemen of the jury, the measure of damages is the value of the land actually taken and the extent to which the value of the use of the right-of-way by the defendants is diminished by the use given to the Power Company. The Power Company must pay for the land taken and damages sustained by the defendants by the construction and maintenance of the power line. The damages thus sustained is not the value of the land under the wires and between the poles, but the extent to which the value of the use of that particular part of defendant's property between the poles and under the wires is diminished by its use by the Georgia Power Company. The space between the poles is not occupied exclusively by the Power Company. Defendants have the right to use this space between the poles for any lawful use, subject to the limitations and burden imposed thereon by the necessary purpose of the Power Company as designated in its notice of condemnation." He further charged: "I charge you further, Gentlemen of the jury, neither a mere inconvenience nor discomfort to the owners of the land is an element of damage, hence should not be considered in arriving at the amount of damage. In a case of this kind the owner must recover because his property is damaged and not for the reason that the occupant is inconvenienced.

"The damages recoverable under the provisions of the Constitution and laws of Georgia are for substantial injury to private property, real damage affecting the market value, and not speculative or imaginary damage affecting only the natural beauties of the property.

"In a condemnation proceeding, compensation for remote and speculative or merely possible damage to the remainder of a tract of land adjacent to that actually taken by condemnation is not recoverable."

When considered in their context and in connection with the entire charge, the portions of the instructions excepted to in special grounds 3 (b), 3 (c), and 3 (e) are not subject to the criticisms leveled at them. When the charge of the court is read in its entirety it is apparent that it was more favorable to the plaintiff than it was to the defendant, as may be seen from the lengthy excerpts set forth above. No part of the charge constituted an expression of opinion by the court that the jury should find any particular element of damages. He clearly modified his charges with respect to consequential damages by informing the jury that they were applicable only if they should find that there were consequential damages. He clearly instructed them that the condemnor was not actually taking and occupying any land except that which would actually be physically occupied by its poles and guy wires and that the condemnee would have such use of the land not actually taken and occupied as would be reasonably consistent with the paramount right of the condemnor's use and occupancy. There was no question from the evidence but that the condemnor had taken, under its powers of condemnation, some of the condemnee's land, and that his use and occupancy of the land would be hindered and restricted in some degree by the presence thereon of the condemnor's poles and wires. In view of these facts and in view of the charge of the court as a whole, none of the assignments of error relating to the charge are meritorious. The last paragraph quoted above was equivalent to an instruction that the defendant would be compensated for only such damages as naturally and proximately arose from the taking.

The wording of the instruction requested, as complained of in special ground 3 (d), seems to have been taken from the language used by this court in *H. G. Hastings Co.* v. *Southern Natural Gas Corp.*, 45 *Ga. App.* 774 (4) (166 S. E. 56). There was no issue in this case in any manner raising any question that the condemnor's lines would not be maintained in a proper and lawful manner or that they had been negligently constructed or would be negligently maintained. This was not an issue in the case and the trial court did not err in refusing the requested instruction.

■ The verdict was within the range of the evidence and was amply authorized by the evidence introduced by the condemnee.

There being no error of law and the evidence authorizing the verdict, the trial court did not err in overruling the motion for a new trial.

*Judgment affirmed. Gardner, P. J., and Townsend, J., concur.*